[No. B191456. Second Dist., Div. Three. May 9, 2007.]

TIRSO DEL JUNCO, JR., Plaintiff and Respondent, v.
V. GEORGES HUFNAGEL et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III.B., III.C., III.D., III.F., III.G., and III.H.

**COUNSEL**

James S. Link and William H. Dailey for Defendants and Appellants.

Moore, Sorensen & Horner and Michael J. Kaufman for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

## I.

## INTRODUCTION

Defendant and appellant V. Georges Hufnagel created a Web site that looked like the Web site of plaintiff and respondent Tirso Del Junco, Jr., M.D. Hufnagel's Web site libeled Dr. Del Junco. Hufnagel appeals from the default judgment entered in favor of Dr. Del Junco. We find unpersuasive all contentions raised by Hufnagel except for the argument that the punitive damage award cannot stand.

In the published portions of this opinion (pts. I., II., III.A., III.E., & IV.), we hold that Hufnagel's counterfeit Web site contained defamatory statements and the trial court had the jurisdiction to strike Hufnagel's answer and enter default.

We reverse the judgment with regard to the punitive damages because there was no proof of Hufnagel's financial condition. In all other respects the judgment is affirmed. We remand the matter to the trial court with directions to modify the judgment by striking the punitive damages.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

Dr. Del Junco was a trained general and vascular surgeon licensed in California. As part of his general surgery residency, Dr. Del Junco received

rotations in female or gynecological surgery, including preoperative management, surgery, and postoperative management. He is a fully licensed, practicing doctor specializing in general and vascular surgery. Hufnagel had her medical license revoked in California and New York and disciplinary proceedings were pending against her in the State of Hawaii.[1]

Dr. Del Junco had an Internet Web page with the domain name of "drdeljuncojr.com." The purpose of the Web site was to provide information about procedures performed by him for women who had significant fibroid disease or endometriosis. He promoted these surgical procedures as alternatives to hysterectomies.

On November 25, 1998, in an unrelated lawsuit, Hufnagel was declared a vexatious litigant. (Code Civ. Proc., § 391.1.)

In March 2003, Hufnagel began operating a counterfeit Web site that mimicked Dr. Del Junco's in many ways, including content, appearance, and layout. Hufnagel's Web site had the domain name of "drdeljunco.com." The counterfeit Web site had a photograph of Dr. Del Junco and a link to contact him. However, when viewers engaged the link, they were directed to a Web page featuring Hufnagel and urged to contact Hufnagel. Additional links on the counterfeit Web site directed potential patients to contact Hufnagel for purposes of evaluation and potential surgery at her Mexican clinic.

The counterfeit Web site included, in large print, in the same font style as on Dr. Del Junco's Web site, the words, "FEMALE ALTERNATIVE SURGERY." The contact information where Dr. Del Junco could be reached was on both Web sites, as was Dr. Del Junco's address.

Hufnagel's counterfeit Web site contained the same logo as the one that appeared on Dr. Del Junco's Web site. The logo had an artistic drawing of a woman with the words "INSTITUTE for ALTERNATIVE MEDICINE" in an arc above the woman. There was a list of medical terminology underneath the logo on Dr. Del Junco's Web site, in rectangular boxes. Hufnagel's Web site also placed the identical medical terms in rectangular boxes below the logo. However, on Hufnagel's Web site, another box appeared between the logo and the list of terms. The box contained the following statements:

"Please note the Institute for Female Alternative Medicine is not registered by California State Department of Corporations. This is not a regulated entity. It pays no taxes and no Corporate records exist.

---

[1] Hufnagel was also known as Vikki G. Hufnagel.

"This does not officially exist. This is a fraud on the public. Furthermore, Dr. Del Junco <u>has no specialized medical training in medicine or in female medicine. He is a vascular student.</u>"

Hufnagel's Web site duplicated a quote found on Dr. Del Junco's Web site that stated having a "hysterectomy for benign fibroid tumors or ovarian cysts is an archaic procedure . . . ." However, underneath the quote on Hufnagel's Web site, the following appeared:

"This is a quote [from] Dr. Hufnagel. Del Junco has not studied hormonal sciences. He misdiagnosed Susan Bucher as a key issue. See Susan Bucher button on this site for further information.

"Dr. del Junco Jr. General/Vascular Surgeon

"<u>He has no training at all in women's medicine. He is not a specialist.</u>"[2]

There were other differences in the two Web sites. As examples, at the top of Hufnagel's counterfeit Web site there was a box that contained a disclaimer stating that the Web site was "created by the supporters of the work of Dr. Vicki Hufnagel." The box also provided information about her book and stated that chapters from the book had been "removed in the infamous raid by the [California Medical Board] . . . ."[3] Hufnagel's Web site stated that Dr. Del Junco had been using Hufnagel's work, for which he failed to give credit, and accused Dr. Del Junco of performing failed procedures.

Prior to April 2003, Dr. Del Junco's Internet Web site generated a minimum of 75 e-mail inquiries from women per month. Since Hufnagel began operating her counterfeit Web site, inquiries to Dr. Del Junco from potential patients dropped significantly. Further, as a result of the decline in inquires, Dr. Del Junco experienced a marked drop in surgeries and his receipts from surgeries decreased. The statements on the counterfeit Web site

---

[2] The underlining did not appear in Hufnagel's counterfeit Web site. We have added this emphasis as the underlined statements are discussed in detail in subsequent parts of this opinion.

[3] The disclaimer at the top of the counterfeit Web site read: "This site was created by the supporters of the work of Dr. Vicki Hufnagel. The site is informational [and provides] full and complete disclosure which Dr. Del Junco's site does not provide. This site is to make . . . aware of the politics of medicine and the economic driving forces that take place everyday that . . . drive all medical care. [¶] Dr. Hufnagel had worked on a book titled Prescription for Evil which had several Chapters of Dr. Del Junco . . . are posted here. These Chapter's [*sic*] were removed in the infamous raid by the [California Medical Board] on Dr. Hufnagel's home."

It appears that during its investigation of Hufnagel, the California Medical Board searched her house. We assume that the reference to a "raid" is to this search.

harmed Dr. Del Junco's reputation. Once he learned of the counterfeit Web site, Dr. Del Junco expended $3,212 in redesigning his Web site.

### B. *Procedure.*

#### 1. *The initial proceedings.*

On January 22, 2004, Dr. Del Junco filed a complaint for damages and for injunctive relief. Dr. Del Junco alleged causes of action for defamation, unauthorized use of name and likeness for business purposes (Civ. Code, § 3344), unfair business practices (Bus. & Prof. Code, § 17200), interference with prospective business advantage, and permanent injunction.

On January 23, 2004, the trial court entered a temporary restraining order restraining Hufnagel from operating a Web site with the domain name of "drdeljunco.com" or any variation of Dr. Del Junco's name.

On February 11, 2004, in propria persona, Hufnagel filed approximately 140 pages purporting to respond to the request for a preliminary injunction and purporting to include allegations of a cross-complaint. These documents had no semblance of proper pleadings and did not conform to court rules.

On February 23, 2004, Hufnagel, in propria persona, filed and served an amended opposition to preliminary injunction. The pleading did not conform to court rules as it cited federal cases, but did not attach them. The opposition never addressed the question of whether it was proper to issue a preliminary injunction.

On February 23, 2004, Hufnagel, in propria persona, filed a one-page answer combined with a request to dismiss Dr. Del Junco's complaint. On that date, Hufnagel, in propria persona, also filed a cross-complaint. These documents were not served on Dr. Del Junco.

Dr. Del Junco filed a motion to strike the answer and cross-complaint. Hufnagel, in propria persona, subsequently withdrew the cross-complaint.

On March 5, 2004, Hufnagel filed a request to dismiss Dr. Del Junco's complaint.

On March 9, 2004, Attorney William H. Dailey appeared in court to substitute in as counsel for Hufnagel. Upon his statement that he was going to file an opposition to the motion for preliminary injunction, the trial court continued the hearing on the motion. However, thereafter neither Hufnagel nor Attorney Dailey filed an opposition to the motion.

On April 5, 2004, Dr. Del Junco filed a motion requesting sanctions be imposed on Hufnagel. In addition to other arguments, Dr. Del Junco noted that his counsel was forced to spend considerable time because of Hufnagel's improper actions.

On April 9, 2004, the trial court issued a preliminary injunction against Hufnagel enjoining her "from operating or continuing to operate a Web site with the domain name of 'drdeljunco.com' or any variation of" Dr. Del Junco's name. The trial court declined to rule on Dr. Del Junco's request for sanctions.

On April 28, 2004, Dr. Del Junco filed a motion to strike Hufnagel's answer and cross-complaint and requested sanctions. He argued that the answer and cross-complaint were in improper form and filed without leave of court and Hufnagel's dilatory tactics forced Dr. Del Junco's counsel to expend unnecessary time in reviewing, researching, and responding to baseless filings.

On May 24, 2004, the trial court denied the motion to strike as moot, based upon the representation that an answer and amended cross-complaint had been filed. The trial court reserved the issue of sanctions.

On May 24, 2004, Hufnagel filed an answer through Attorney Dailey.

On June 3, 2004, Dr. Del Junco filed a motion for reconsideration of the May 24, 2004, ruling with regard to the issue of sanctions. The reconsideration motion informed the trial court that contrary to prior representations, no amended cross-complaint had been filed by Hufnagel.

Hufnagel filed no opposition to the motion for reconsideration.

In July 2004, Hufnagel filed a first amended cross-complaint. The trial court sustained Dr. Del Junco's demurrer to the first amended cross-complaint without leave to amend. No opposition to the demurrer had been filed by Hufnagel.

In a minute order dated August 17, 2004, the trial court granted the motion for reconsideration and sanctioned Hufnagel the sum of $2,036.30 for the reasons stated in the motion. Additionally, the trial court sanctioned Hufnagel $6,036.30 in the form of attorney fees. Pursuant to the trial court's directive, Dr. Del Junco prepared a proposed order detailing the reasons for the sanction order. On October 21, 2004, the trial court ordered Hufnagel to pay $6,036.30 in sanctions for (1) filing a volume of documents that purported to oppose Dr. Del Junco's motion for preliminary injunction, but the documents were

not in proper form and did not conform with court rules; (2) filing a cross-complaint without permission of the court, which violated the November 25, 1998, vexatious litigant order; (3) filing and serving an opposition to the preliminary injunction that failed to comply with the court rules as it cited federal cases but did not attach them, thus burdening Dr. Del Junco's counsel; and (4) filing and serving on March 5, 2004, a request for dismissal form requesting Dr. Del Junco's complaint be dismissed. The trial court found Hufnagel's documents were procedurally defective and her actions were willful and without justification and improperly burdened Dr. Del Junco to incur unnecessary expense. The sanctions were due and payable within 45 days. (The Oct. 2004 order did not mention the $2,036.30 sanction order contained in the Aug. 2004 minute order.)

Hufnagel did not pay the sanctions, which remained unpaid, as of January 10, 2005.

As of September 12, 2004, Hufnagel was still operating a Web site in violation of the injunction. She did so through March 2005.

On September 14, 2004, Dr. Del Junco served interrogatories on Hufnagel. Hufnagel did not respond to this discovery. Dr. Del Junco's counsel telephoned Attorney Dailey in an attempt to meet and confer; Attorney Dailey did not return the telephone calls.

A case management conference was held in October 2004. Hufnagel did not appear and she did not file a case management conference statement. Attorney Dailey called the court stating he would be late. However, he never made an appearance.

### 2. *The motion for terminating sanctions.*

On January 11, 2005, Dr. Del Junco filed a motion for terminating sanctions pursuant to Code of Civil Procedure sections 128, 128.6, and former section 2023.[4] The motion was supported by the declaration of Attorney Michael Kaufman. The motion recounted the events that preceded the motion, and argued it was appropriate to strike Hufnagel's answer and enter default because she failed to respond to discovery, failed to abide by court orders and procedures, failed to pay sanctions, and violated the preliminary injunction.

On January 24, 2005, Hufnagel, through Attorney Dailey, filed a single-page opposition to the motion for terminating sanctions. The opposition

---

[4] The relevant portion of Code of Civil Procedure former section 2023 is currently found in Code of Civil Procedure section 2023.030.

document stated without evidentiary support, that Hufnagel was impoverished, discovery would be answered prior to the hearing on the motion to terminate, and Hufnagel had complied with the injunction but due to a misunderstanding the Web site server company had not been able to immediately deactivate the links in Hufnagel's counterfeit Web site.

On February 14, 2005, the trial court granted the motion for terminating sanctions. The trial court struck Hufnagel's answer and entered default based upon a pattern of conduct by Hufnagel and her counsel and the violation of court rules, local rules, fast track rules, the Code of Civil Procedure, and orders of the court. The trial court did *not* base its decision on the failure to pay monetary sanctions.

On July 25, 2005, Hufnagel filed an ex parte application for an order shortening time for a hearing of a motion to set aside the default. In an attached declaration, Attorney Dailey declared, with little explanation, that he caused the delays. In Hufnagel's 14-line declaration she declared that her finances had not allowed her to hire other legal counsel and her health was poor. The application was denied.

### 3. *Default judgment.*

On November 30, 2005, Dr. Del Junco filed an application for entry of default judgment. Dr. Del Junco supported his request with his declaration and that of his attorney. Dr. Del Junco requested damages in the total sum of $563,585.26.

On November 30, 2005, judgment by court after entry of default was entered against Hufnagel in favor of Dr. Del Junco in the sum of $558,724.90, broken down as follows: $200,000 in general damages; $136,212 in special damages; $200,000 in punitive damages; $21,914 in attorney fees; and $598.90 in costs. The trial court also entered a permanent injunction.

Hufnagel appeals from the judgment.

## III.

## DISCUSSION

### A. *The defamatory statements are actionable.*

Hufnagel contends that the statements in the counterfeit Web site are not actionable because they are not defamatory. This contention is not persuasive.

" 'The sine qua non of recovery for defamation . . . is the existence of falsehood.' [Citation.]" , (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 384 [10 Cal.Rptr.3d 429]; see Civ. Code, § 45 ["Libel is a false and unprivileged publication by writing . . . or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."].)

Dr. Del Junco received, as part of his general surgery residency, rotations in female or gynecological surgery, including preoperative management, surgery, and postoperative management. He is a fully licensed, practicing doctor specializing in general and vascular surgery with all of the necessary medical training to perform surgeries. He is not a student. However, the counterfeit Web site stated that "Dr. Del Junco has no specialized medical training in medicine or in female medicine. He is a vascular student." The Web site also stated that Dr. Del Junco "has no training at all in women's medicine. [¶] He is not a specialist." The false import of these statements is that Dr. Del Junco is not a licensed physician and does not have the educational background to perform the procedures he promotes. Even though, as Hufnagel notes in her reply brief, her Web site stated that Dr. Del Junco was a "General/Vascular Surgeon," any reasonable reader of her counterfeit Web site would conclude that Dr. Del Junco lacked the medical training to perform the surgeries he promotes and performs. As such, the statements in Hufnagel's Web site cast serious doubt on Dr. Del Junco's professional ability and are defamatory. (Civ. Code, § 46, subd. 3 [slander is a false statement that tends to injure one in his or her "profession, trade or business, either by imputing to him [or her] general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his [or her] office, profession, trade, or business that has a natural tendency to lessen its profits"].)

Contrary to Hufnagel's argument, the quoted statements, taken in context and when the Web site is read as a whole, are not statements of opinion. (*Franklin v. Dynamic Details, Inc. supra*, 116 Cal.App.4th at p. 385 [under totality of circumstances opinions are protected unless "a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact"]; see discussions in *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 19 [111 L.Ed.2d 1, 110 S.Ct. 2695]; *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260 [228 Cal.Rptr. 206, 721 P.2d 87].) Accusing a physician of being untrained and lacking the proper credentials are not statements of opinion. They are statements of fact. (Cf. *Franklin v. Dynamic Details, Inc., supra*, 116 Cal.App.4th 375 [e-mails expressed opinions]; *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1438–1439.)

Accordingly, the statements on the counterfeit Web site damaged Dr. Del Junco's professional reputation and were actionable.

B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

E. *The trial court had the jurisdiction to issue the terminating sanction.*

Hufnagel contends the trial court lacked the jurisdiction to issue what amounted to a terminating sanction. She argues the court exceeded its powers in striking the answer and entering default. This contention is not persuasive.

A number of statutes provide authority for the trial court to terminate a case. For example, Code of Civil Procedure section 575.2 permits dismissal of a case for the violation of fast track rules where noncompliance is the fault of the party and not counsel. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *Tliche v. Van Quathem* (1998) 66 Cal.App.4th 1054, 1061 [78 Cal.Rptr.2d 458].) Code of Civil Procedure former section 2023 permits trial courts to impose terminating sanctions and strike pleadings as a discovery sanction. (See fn. 4, *ante.*) Additionally, the statutes recognize that the courts have the inherent authority to dismiss an action. (Code Civ. Proc., §§ 581, subd. (m), 583.150; *Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915 [231 Cal.Rptr. 738, 727 P.2d 1019]; *Progressive Concrete, Inc. v. Parker* (2006) 136 Cal.App.4th 540, 551 [38 Cal.Rptr.3d 939].)[7]

Trial courts should only exercise this authority in extreme situations, such as when the conduct was clear and deliberate, where no lesser alternatives would remedy the situation (*Lyons v. Wickhorst, supra,* 42 Cal.3d at p. 917), the fault lies with the client and not the attorney (cf. *Garcia v. McCutchen, supra,* 16 Cal.4th 469), and when the court issues a directive that the party fails to obey. (E.g., Code Civ. Proc., former § 2023.)

Here, from the start of the case to the time the trial court struck Hufnagel's answer and entered default, Hufnagel showed no interest in taking part in the

---

*See footnote, *ante*, page 789.

[7] Code of Civil Procedure section 583.150 reads: "This chapter does not limit or affect the authority of a court to dismiss an action or impose other sanctions under a rule adopted by the court pursuant to Section 575.1 or by the Judicial Council pursuant to statute, or otherwise under inherent authority of the court."

Code of Civil Procedure section 581, subdivision (m) reads: "The provisions of this section shall not be deemed to be an exclusive enumeration of the court's power to dismiss an action or dismiss a complaint as to a defendant."

case or in following orders of the court. All of her actions were those of an obstructionist, not a participant in the process. She filed documents in propria persona that did not follow proper form, were lengthy, contained irrelevant information, and violated court rules. She filed documents without serving them. She failed to comply with the injunction and continued to operate the counterfeit Web site. She did not pay sanctions when ordered to do so. When she had counsel, things did not improve. Misrepresentations were made to the court, documents were not filed when promised, responses to interrogatories were never delivered, and phone calls were not returned. The actions of Hufnagel and her counsel were willful and deliberate, caused unnecessary delay, and wasted the trial court's resources. The actions caused Dr. Del Junco to incur unnecessary expense. Under these circumstances the trial court had the jurisdiction to strike Hufnagel's answer and enter default.

Hufnagel correctly states that she could have been held in contempt for violating court orders and the trial court could have issued other orders, such as an order compelling her to answer discovery. She suggests that the trial court had to take such actions before issuing what amounted to a terminating sanction by striking her answer and entering default. However, there is nothing in the record to suggest that such hearings or sanctions would have provided the impetus Hufnagel needed to properly participate in this case. She had already been deemed a vexatious litigant in another case. Here, she filed documents in propria persona that did not comply with court rules. Given the history of this case it would have been futile for the trial court to issue additional orders before striking Hufnagel's answer and entering default. It is clear that Hufnagel had no intention of answering discovery, filing proper and timely papers, or complying with court orders. She and her counsel had withdrawn from the case. No lesser remedy would have changed Hufnagel's conduct.

We agree with Hufnagel that some of the responsibility for the problems fall at the feet of her counsel. However, the record suggests that Attorney Dailey's actions were part and parcel of Hufnagel's strategy of delaying and throwing darts at others, rather than taking responsibility for her own actions.

The trial court had the jurisdiction to strike Hufnagel's answer and enter default.

F.–H.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

---

*See footnote, *ante*, page 789.

## IV.

## DISPOSITION

The judgment is reversed with respect to the award of punitive damages. In all other respects, the judgment is affirmed. The matter is remanded to the trial court with directions to modify the judgment by striking the punitive damages.

Dr. Del Junco is awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied May 31, 2007, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied August 22, 2007, S153601.