Filed 1/22/14  Heurlin v. Super. Ct. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBRA M. HEURLIN,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>CITI MORTGAGE INC., et al.,<br><br>    Real Parties in Interest | G047655<br><br>(Super. Ct. No. 30-2010-00411242)<br><br>O P I N I O N |
| JOHN M. HEURLIN<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITI MORTGAGE INC., et al.,<br><br>    Defendants and Respondents. | |

Appeal by Debra M. Heurlin treated as an original proceeding; petition for writ of mandate from order of the Superior Court of Orange County, Charles Margines, Judge.  Petition granted.  Appeal by John M. Heurlin dismissed.

Debra M. Heurlin, in pro. per., for Petitioner.

John M. Heurlin, in pro. per., for Plaintiff and Appellant.

No appearance for Respondent.

Locke Lord LLP, Nina Huerta and Susan J. Welde for Real Parties in
Interest.

*     *     *

## I.  INTRODUCTION

The trial court dismissed the wife from this case for abandoning it.  We find
insufficient evidence of abandonment.  Taking the record as a whole, she has prosecuted
the case vigorously.  Since her appeal is premature, we treat it as a petition for a writ of
mandate seeking to vacate the order of dismissal, and grant that petition.

## II.  FACTS

John M. Heurlin and Debra M. Heurlin filed a joint complaint (one
document) in this action on September 24, 2010.  Each one signed the document
individually.  The complaint alleged they had taken out a loan on their house in July of
2003 from defendant Citi Mortgage, Inc., et al. (Citi), calling for a mortgage payment of
$1,679.91 a month, but Citi later unilaterally increased the payment to $2,288.98 a
month.  Citi also filed a notice of default, claiming the Heurlins owed it over $10,000 and
yet, when the Heurlins tendered the amount claimed, Citi asserted it would take $34,000
to bring the loan current.  A foreclosure sale was scheduled for September 29, 2010.

The attorney caption in the Heurlins' joint complaint listed first "John M.
Heurlin," then, below his name, "Debra M. Heurlin," as if they were both members of the
same law firm.  In all of the filings in the record before us Debra is listed with John in a
joint "Appearing *Pro Se*" caption, except for one.

The Heurlins also moved, ex parte, for a temporary restraining order to
prevent the impending foreclosure.  The declaration supporting the ex parte application
stated that John M. Heurlin was an "inactive" attorney and that he and his wife had
significant equity in their home.  The trial judge then assigned to the case granted the

2

temporary restraining order on September 27, 2010.

Proof of the service of the summons and complaint were filed on October 12, 2010. The attorney caption on the judicial council form said: "John M. Heurlin, Esq." and named him as the "Attorney for . . . John and Debra Heurlin, Pro Se."

These joint documents presented Citi's attorneys with a problem. They were aware of their own ethical duty not to directly communicate with a party otherwise represented by counsel. They were also apparently aware of the need to ensure that all parties, including John and Debra each ostensibly proceeding individually, receive proper notice of their filings. And they had looked up John M. Heurlin on the State Bar Web site, and discovered he had been suspended and never reinstated. Accordingly, in a letter dated October 8, 2010, they told the Heurlins that they would resolve that problem by sending separate mailings each to John and Debra.

Citi filed both a demurrer and a motion to strike portions of the complaint. These motions were vigorously opposed in written filings by the Heurlins, again using the two-person "Appearing *Pro Se*" attorney caption. A hearing on the demurrer and motion to strike were continued. In the interim, the Heurlins successfully obtained a preliminary injunction preventing foreclosure pending further order of court, although the injunction required them to remain current on their mortgage payments, plus the property's insurance and tax obligations. The written injunction, signed by the trial judge, like almost all the rest of the Heurlins' specially drafted pleadings, used the two-person "Appearing *Pro Se*" attorney caption and gave the address of an office in Tustin, as if both Debra and John worked out of that office.

The Heurlins' complaint survived Citi's first demurrer, but they needed to file an amended complaint. They filed a first amended complaint in late March 2011. Both John and Debra signed it individually.

The court scheduled a case management conference for early June 2011, giving notice to the Heurlins in two separate mailings. They filed a judicial council form

3

case management statement, on behalf of both John and Debra with "Attorney for Propria Persona" appearing in the upper left-hand corner of the document. But unlike the proof of service, this document didn't say *who* was the attorney. It just listed John, and then beneath his name, Debra's name. Only John, however, showed up in person for the case management conference.

The same month, Citi filed a second demurrer. After a ruling on it, these causes of action survived: accounting, removal of a cloud on title, slander of title, breach of contract, breach of fiduciary duty and equitable relief for unfair trade practice. The pleading skirmishes having been completed, Citi filed its answer in August 2011, again sending separate mailings to the Tustin office address.

Another case management conference was scheduled for October 2011. The Heurlins submitted a joint statement, signed by each of them, though (again) only John showed up for the actual court proceeding. The same held true for a mandatory settlement conference held in late April 2012. John showed up for the April mandatory settlement conference. Debra did not. The conference was conducted by a pro tempore judge, and all the ensuing minute order said was, "Case is not settled."

The record does not disclose much in the way of any formal court filings in the interim between the initial scheduling of the mandatory settlement conference in October 2011 and the time it was actually conducted in April 2012. The lacuna appears to be the result of a discovery dispute, in which Citi was trying to depose John. Citi's claim was that the Heurlins had failed to pay insurance and property taxes since 2008, necessitating the imposition of an escrow account on the loan. Despite the factual nature of Citi's defense, it had been unable to depose John or have him produce documentation relating to the payment of property taxes and insurance.

Trial was now looming, set for May 29, 2012. Accordingly, on May 2, Citi presented an ex parte motion to shorten time to bring a motion to compel John's

4

deposition, followed by an ex parte application to continue the trial date and reopen discovery. The effort resulted in the trial date being continued.

The summer saw John resisting Citi's efforts to take his deposition. Using the couple's usual two-person "Appearing *Pro Se*" attorney caption, he objected to the requirement of producing documents; supposedly they weren't relevant. The objection was signed by John alone.

Meanwhile, in August 2012, Citi changed its counsel and again wanted a continuance. New counsel stressed that John had not been cooperative in discovery. John and Debra opposed the ex parte request, but this time used the "Appearing in Propria Persona" on the attorney caption. John alone signed the opposing points and authorities. The proof of service declaration was signed by Sondra Hong listing the Tustin office as her business address.

No one from the Heurlins' side, however, showed up for the ex parte hearing. The trial judge granted new counsel's request for a continuance, and then added a comment which would lead to this writ proceeding: "I'm also going to set an OSC [ordr to show cause] re dismissal of the case as to Ms. Heurlin. . . . I don't think she's ever appeared. If she has, I don't think she ever addressed the court. At any rate, although it looks like Mr. Heurlin is representing only himself, she nominally appears to be going along for the ride. I just need to see the whites of her eyes, or if she obtains counsel, then, I need to talk to her counsel."

After further discussion on the continuance request, the trial judge stated: "I'm also setting an OSC re dismissal. Let me ask you before I do. Have you had any contact with Ms. Deborah [*sic*] Heurlin?" Counsel answered: "I have not," and mentioned she had corresponded in e-mail with only Mr. Heurlin. The court then said: "Okay. OSC re dismissal for plaintiff Debra Heurlin's failure to appear and participate in the litigation. And let me set that on September 28, 2012, at 9 a.m. in this department."

5

But the court did not give *any* notice of the OSC that it set. The minute order only said, "The Order to Show Cause as to defendant, [*sic*] Debra M. Heurlin re: Dismissal for Failure to Appear and Participate is scheduled for 9/28/2012 at 9:00 AM in Department C19." The task of giving notice fell to Citi's counsel, who mailed a notice of ruling August 22, 2012, jointly to both John and Debra at the Tustin office address. As regards the OSC concerning Debra, all the notice said was: "The court also scheduled, *sua sponte*, an O.S.C. Re Failure to Prosecute as to Plaintiff Debra Heurlin, to be heard on September 28, 2012 at 9:00 a.m. in Department 19."

The Heurlins – jointly again – filed written opposition to the OSC set for September 28 using their usual "Appearing *Pro Se*" attorney caption. The opposition used the rhetorical device of conflating the identity of John and Debra under the collective rubric of "Heurlin." The main argument asserted in the opposition was that the trial court lacked jurisdiction to dismiss Debra because she had "participated" in a number of the filings in the case, including the complaint, the "preparation and filing of the request for both temporary and preliminary injunction," in opposing the continuance of trial, and in discovery, investigation and "the signing of pleading [*sic*]."

While both John and Debra signed the joint opposing points and authorities, the main body of evidence offered in opposition was John's declaration, which essentially argued there had been no delay in prosecution and recounted the litigious exertions of the collective "Heurlin" to that end. Debra's declaration was extremely short. Its only substantive statement was one sentence: "I have read my husband John M. Heurlin's declaration and agree with the facts stated therein." The proof of service for the joint opposition was again signed by Sondra Hong at the same Tustin address and stated she was "familiar with the practice of the Law Offices of John M. Heurlin."

The only "appearance" for plaintiff at the OSC was John's. Debra did not appear. Citi's counsel also appeared. John argued that the court seemed to "apparently" be proceeding under statutes involving cases not brought to trial within two years. He

asserted "we" were "ready to go to trial in May" and every month thereafter, and complained about the continuances which had been granted to Citi. He finished his remarks by saying he heartily opposed the dismissal.

The court then directly asked him, "But Mr. Heurlin, for the record, you are not representing Ms. Heurlin?" John did not invoke any Fifth Amendment right. Rather he quickly rejoined, "Oh, heavens no."

After asking for any comments from Citi's counsel, the judge then announced his decision: "The case as to Ms. Heurlin is dismissed. It's not so much looking at the two-year statute, Mr. Heurlin, just for your information, Ms. Heurlin has not appeared in this case. She seems to have abandoned it. Anyway, that's the order."

Citi's attorney understood the reason for the dismissal to be abandonment, and said exactly that in its notice of ruling. Nothing was said about John's possible unauthorized practice of law.

The Heurlins timely filed a joint notice of appeal, continuing to refer to themselves under the uniplural "Heurlin," designating the September 28, 2012 order as their main target.

### III. DISCUSSION

Preliminarily, we determine that this "appeal" is not really a proper appeal. There is no final *judgment* or appealable order dismissing Debra Heurlin from the case. (Code Civ. Proc., §§ 904.1, subd. (a)(1), 581d.) However, we deem this premature appeal to be worthy of treatment as a petition for writ of mandate so as to avoid prejudice to both plaintiffs. (See *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746 ["the case in its present posture presents unusual circumstances making it appropriate to ascertain from the record whether there are substantive errors that the Court of Appeal should, by writ, order the trial court to correct"].)

There is insufficient evidence Debra actually abandoned her case. The only place in the record where Debra's personal presence was arguably required is the October

7

2011 minute order which, in scheduling the settlement conference, briefly stated, "All parties to comply with State and Local Rules on Mandatory Settlement Conferences." Had Debra consulted the local Orange County Superior Court rules, she would have discovered that her personal presence was required. (See Orange County Superior Court Local Rules, rule 316(A) (hereinafter Local Rule).) However, any power of the court under local rules to actually dismiss is either predicated on lack of actual trial preparation (Local Rule 316(D)) or, if predicated on failure to comply with the local rules themselves, on proper notice that the court is considering dismissal for that reason (Local Rule 381(B)). Even in the latter case, the "draconian" step of dismissal, as distinct from some lesser sanction, is disfavored. (See *Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 211-212.)

Moreover, neither the trial court nor Citi took any action in the wake of Debra's absence from the April 2012 mandatory settlement conference. Thus for purposes of this writ proceeding, it is not accurate to say that her bodily absence at the April 2012 mandatory settlement conference showed lack of preparation for trial, much less abandonment. On top of that, it is undeniable that, giving Debra credit for all the filings and pleadings which have her name on them as a party, she certainly hasn't abandoned the case at all.

The trial judge appears to have concluded that Debra was only along "for the ride." But even assuming this is the case, dismissal would still necessarily be an abuse of discretion. To justify a trial court's exercise of its inherent power to dismiss for lack of prosecution, there must be both deliberate and extreme conduct plus the unavailability of a less severe remedy. (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915, 917; *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799; see also Code Civ. Proc., § 583.150.) That is not the case here.

*Lyons* also recognized a court has inherent authority to dismiss a sham case. (*Lyons v. Wickhorst, supra,* 42 Cal.3d at p. 915.) But dismissals of sham actions have

8

been limited to fictitious or invalid claims.  (*Ibid.*)  Here with the case still at a pretrial stage, we cannot say the plaintiffs' claims against Citi really are fictitious or invalid.

Moreover, the problem of the vagueness of the notice which Debra actually received remains.  She did not receive notice from the court.  The court did not send her its "whites of her eyes" comment or express any concern that Debra might not actually be participating in the case, except by being illegally represented by John. Rather, the only notice Debra received was from Citi, and all it said, directly, was "Failure to Prosecute."  And the attached minute order wasn't much more help either.  It only said, "Failure to Appear and Participate."  Thus, the only warning Debra received was in three words:  prosecute, appear and participate.  And we have already noted the ambiguities in those words as exemplified by any litigation in which a corporate defendant *only* prosecutes, appears and participates *through* counsel.

We must grant Debra's constructive petition for writ of mandate and order the trial court to vacate its September 28, 2012, order dismissing her from this case. John's appeal from the order of dismissal is dismissed as premature.

In the interests of justice we shall not award costs in this interlocutory proceeding, but instead direct the trial court to award the appellate costs from this proceeding to the ultimately prevailing party.

RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.
.


9

Rylaarsdam, Acting P. J., Concurring:

I write separately to express my concern with the obvious unauthorized practice of law happening before our very eyes. (Bus. & Prof. Code, § 6125.) The unauthorized practice of law is not only a misdemeanor, it is also a contempt of court. (See *City of Downey v. Johnson* (1968) 263 Cal.App.2d 775, 783.) The trial court has the authority to curb such contempts of court. (See, e.g., *Betsworth v. Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 586, 596 ["The judge has an obligation to swiftly punish those who attempt to win by disobeying the rules"].)

There is no "spousal exception" to the unauthorized practice statute. (*Abar v. Rogers* (1981) 124 Cal.App.3d 862, 865.) In *Tardiff v. State Bar* (1980) 27 Cal.3d 395, the Supreme Court held that a disbarred attorney could not represent his wife, and doing so was the unauthorized practice of law. From what one can tell of the facts in the *Tardiff* case, our high court included written work in the unauthorized representation. (*Id.* at p. 402 ["petitioner represented his wife in an eviction action and . . . signed pleadings, made court appearances and entered into a settlement agreement as 'attorney' for his wife"].)

Nor is there any doubt here that John does not come within the provision of the Rules of Professional Conduct, rule 1-311(C)(1), which allows a suspended or disbarred attorney to draft court documents. That rule requires the work be done under the supervision of a member of the bar. Likewise, this court has ruled the unauthorized practice of law includes responding to discovery requests and preparing declarations when not otherwise done under the supervision of a licensed attorney. (See *Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61, 69.)

In *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 131 (*Birbrower*), our high court relied on the definition of practice of law set forth in *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535, 542 (*Baron*): The practice

1

of law is "'the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court.'" (See also *Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 609 [reiterating the foregoing definition and noting it included "'legal instrument and contract preparation'"].)

The evidence that John has been, in fact, representing his wife Debra in this case is unavoidable. Three items stand out. One, in a careless slip up, the attorney caption for the proof of service of summons form said, "John M. Heurlin, Esq." the "*Attorney for* . . . John and *Debra Heurlin*, Pro Se." (Italics added.) The reference is not ambiguous. John would hardly refer to himself as "John Attorney for John." Merely adding the words "Pro Se" was thought enough to sanitize the obvious representation of Debra by John.

Two, there is the continued use of a person named Sondra Hong at the Tustin office address who repeatedly declared, under penalty of perjury, that she is "readily familiar with *the practice of the Law Offices of John M. Heurlin for collection and processing of correspondence for mailing*," throughout this record. These references include the notice of this appeal and the designation of the record. That's exactly what one would expect if Heurlin had kept on doing the very thing that has now gotten him disbarred – holding himself out as a lawyer. (See generally *In the Matter of Heurlin* (Review Dept., 09–O–10774, Aug. 7, 2012) [2012 WL 5406792].)

Three, if Debra were really proceeding in propria persona, she would have to file her own paperwork and not use the "Law Offices" of a suspended, now disbarred attorney. Yet not a single filing in our record gives any indication she actually prepared any of her own paperwork.

2

It would not be inappropriate for the trial court to order Debra to appear in court so that the court may explain to her that it is inappropriate and illegal for John to represent her in this action. If the court ascertains she is representing herself, it has further authority to require her to file all future paperwork in one document in her own name – no more "joint" filings by two people, one of whom might, or might not, be in propria persona. The trial court has the further authority to stop Debra from using the so-called "Law Offices of John M. Heurlin" to accomplish service. And the court should also be aware of its continuing power under the local rules to require Debra – if she really is representing herself – to be personally present in any proceeding where any other party would normally be present, such as a mandatory settlement conference.

I would also point out that allowing John to de facto represent Debra may have repercussions in the future. Appellate courts have had to undertake the wasteful task of reversing judgments when parties adversely affected by them make the claim they were represented by an unauthorized person. (See *Hansen v. Hansen* (2003) 114 Cal.App.4th 618, 620 [reversing nonprobate judgment favorable to one sibling where estate was being improperly represented by other sibling]; *Russell v. Dopp* (1995) 36 Cal.App.4th 765, 780 [reversing large judgment obtained by plaintiff because two defendants were improperly represented by unauthorized person]; *City of Downey v. Johnson, supra,* 263 Cal.App.2d at pp. 782-783 [reversing favorable judgment obtained by a government entity in a condemnation action because of representation of the landowner by an unauthorized person]; *People ex rel. Dept. of Public Works v. Malone* (1965) 232 Cal.App.2d 531, 537-538 [same as *City of Downey*].)

3

I recognize that there may be good policy reasons against the rigorous enforcement of the definition of the practice of law given in *Baron* and *Birbrower*.  But that is a matter for our Supreme Court.

Acting P. J.


RYLAARSDAM, ACTING P. J.

4