Filed 1/4/16  (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DOUGLAS J. CRAWFORD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B257412<br>(Super. Ct. No. 56-2012-426563-<br>CU-BC-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 9, 2015, be modified as follows:

1.  On page 2, in the second, third and fourth full paragraphs under the heading FACTS, the name "Ninion" is deleted and the name "Ninon" is to be inserted in its place.   In footnote 1, the name "Ninion" is deleted and the name "Ninon" is to be inserted in its place.

2.  On page 2, in the third full paragraph under the heading FACTS, the sentence that reads, "Ninion was 79 years old at the time" is deleted, and the following sentence is inserted in its place, "Ninon was 76 years old at the time."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DOUGLAS J. CRAWFORD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B257412<br>(Super. Ct. No. 56-2012-426563-<br>CU-BC-VTA)<br>(Ventura County) |

The practice of law can be abundantly rewarding, but also stressful. The absence of civility displayed by some practitioners heightens stress and debases the legal profession. Those attorneys who allow their personal animosity for an opposing counsel or an opposing party to infect a case damage their reputations and blemish the dignity of the profession they have taken an oath to uphold.

In *Green v. GTE California, Inc.* (1994) 29 Cal.App.4th 407, 408, we said counsel's comments and actions at a deposition made the term "civil procedure" an oxymoron. In comparison to what occurred in this case, one could almost say the offending counsel in *Green* conducted himself with decorum.

Here the practice of law became more than stressful; it was dangerous. An attorney representing himself threatened defendants' counsel with pepper spray and a stun gun at a deposition. When defendants moved for terminating sanctions, plaintiff filed an opposition that was openly contemptuous of

the trial court. Such conduct can have consequences. (See *In re Koven* (2005) 134 Cal.App.4th 262.) The trial court granted defendants' motion for terminating sanctions. Plaintiff appeals the ensuing judgment. We affirm.

FACTS

*Complaint*

In his first amended complaint, Douglas J. Crawford (Crawford) alleged causes of action for breach of contract, breach of fiduciary duty, negligence and elder abuse, as follows:

On September 2, 2008, Crawford accompanied his mother, Ninion Crawford (Ninion),[1] to a branch of JPMorgan Chase Bank, N.A. (Chase) to withdraw money from Ninion's account. While there, Ninion instructed Chase to place a note on her bank accounts not to withdraw or transfer more than $5,000 without first contacting Crawford. A Chase employee agreed to comply.

In April 2011, Shruti Kohli was employed by Chase as an investment advisor. Kohli advised Ninion to invest in a 29-year annuity. Ninion was 79 years old at the time. Kohli prepared a slip to withdraw $200,000 from Ninion's account. The money was transferred without first contacting Crawford.

Ninion is now deceased. Her estate has assigned the causes of action alleged in the complaint to Crawford. Crawford named Chase, Kohli and the Chase branch president, Melissa Griffin, as defendants.[2] Chase rescinded the annuity, but Crawford complains that Chase failed to reimburse him $2,000 in lost interest.

---

[1] Because appellant and Ninion Crawford share the same last name, we refer to Ninion Crawford by her first name and intend no disrespect.

[2] Except where the context indicates otherwise, defendants are collectively referred to as "Chase" herein.

*Small Claims Actions*

Crawford served notices of depositions and deposition subpoenas for the three defendants and Chase's in-house counsel. The depositions were noticed to take place at Crawford's personal residence.

Chase objected to holding the depositions at Crawford's private residence because the deponents and their counsel feared for their safety. Crawford had filed an appeal in another case he had brought against Chase in San Diego. In the instant case, Chase attached Crawford's petition for rehearing in the San Diego case as an exhibit to support its objection to holding the deposition at Crawford's residence.

Crawford's petition referenced the Oklahoma City and Boston bombings. The petition stated in part: "The more simple truism or reality of life is that the victims of government abuse, bias or even unequal application of the law do not, actually, detonate a bomb in retaliation to those abuses, but, generally, go home and kick the dog to death for barking or beat the crap out of some random person for cutting them off in traffic or shoot up the workplace for getting passed over for a promotion or burn their children with scalding hot water for spilling . . . a glass of milk, or, in other words, translate their frustrations of helplessness into committing a heinous act in apparent disproportion to the harm that befell upon them. The ripple effect of injustices committed by government agents [like the justices who ruled against him] herein, just roll downhill *onto and into* the lives of other truly innocent, unconnected individuals and makes this . . . just a crappier place to live."

The deponents did not appear for their depositions. Instead of filing a discovery motion in the underlying case, Crawford filed individual small claims court actions against each of the Chase defendants and Chase's counsel. The actions were based on the deponents' failure to appear in response to deposition subpoenas.

Crawford requested damages, including $500, and actual damages for failure to obey a subpoena as provided by Code of Civil Procedure section 1992.[3]

Chase moved ex parte to quash the small claims court actions. The trial court denied the motion to quash, but ordered the cases transferred and consolidated with the instant action.

*Deposition of Matthew Crawford*

Matthew Crawford (Matthew) is Crawford's brother. Matthew was the sole beneficiary of the annuity. Chase contended Crawford's true objection to the annuity was not that it was unsuitable for his mother, but that his mother excluded him. Thus Chase believed that Matthew was a material witness.

Chase served a deposition subpoena and a notice of deposition for Matthew in San Francisco where he resided. The subpoena did not state that the deposition would be videotaped, but the notice did.

On February 14, 2014, Matthew appeared for his deposition with Crawford as his attorney. Matthew and Crawford walked out claiming they were afraid for their personal safety.

The question of Matthew's deposition was raised at a February 20, 2014, hearing. The trial judge suggested that Chase use the judge's name to request a conference room at the San Francisco Superior Court for the deposition. That should alleviate any concern that Crawford might have for his personal safety.

Chase emailed Crawford on March 7, 2014, stating that it could not obtain the use of a superior court conference room. Chase said it was willing to take Matthew's deposition at a court reporter's office of Crawford's selection. Chase proposed March 17, 2014, as the deposition date.

---

[3] All statutory references are to the Code of Civil Procedure unless otherwise stated.

4

Crawford replied that he would not respond to the deposition request until Chase responded to his request for a camera in the courtroom for trial and a continuance of the trial date.

On March 14, 2014, Chase emailed Crawford asking whether Matthew would appear for the March 17 deposition. Crawford replied that discovery closed two weeks prior. In reply, Chase pointed out that Matthew had been served with a deposition subpoena, appeared for the deposition, but left immediately after being sworn. Chase asked again if Matthew would appear for his deposition on March 17. Crawford did not reply. On March 17, Chase appeared for Matthew's deposition, but neither Matthew nor Crawford appeared.

On April 2, 2014, the court held a hearing on Crawford's motion for relief from a jury waiver. Crawford inquired of the court what the sanction would be if Matthew did not appear for his deposition. The court refused to commit to any particular sanction. At the hearing, Crawford did not mention the close of discovery issue. In fact, Crawford wanted to reopen discovery to depose one of Chase's witnesses.

Chase agreed to the deposition of its witness and suggested several dates for Matthew's deposition. Crawford suggested April 18, 2014, but stated Matthew's deposition would not be videotaped absent a court order.

After further emails, Chase moved to compel Matthew's deposition. Chase's counsel stated there was good reason for videotaping because Crawford had falsely accused him of irrational, intimidating or violent behavior. Chase pointed out that section 2023.030 allows a party to give notice of its intention to videotape at least three days prior to the deposition.

The trial court ruled that Crawford had more notice than is required, and that the discovery cut-off date does not apply because Matthew walked out of the first deposition. The court ordered Matthew to appear for a videotaped

deposition on April 21, 2014.  The court imposed a $1,600 sanction against Crawford.

Matthew and Crawford appeared on April 21.  Immediately after Matthew was sworn, Crawford pointed a can of pepper spray at counsel's face from a distance of approximately three feet.  Crawford said, "Mr. Traver [Chase's counsel], if things get out of hand, I brought what is legally pepper spray, and I will pepper spray you if you get out of hand."  Crawford then produced a stun gun, pointed it at Traver's head, and said, "If that doesn't quell you, this is a flashlight that turns into a stun gun."  Crawford discharged the stun gun close to Traver's face. Traver terminated the deposition.

*Motion for Terminating Sanctions*

Chase moved for terminating sanctions based on its unsuccessful attempts to depose Matthew and Crawford's threats of physical violence.

The first paragraph of Crawford's written opposition to the motion states:  "Present Plaintiff and future train passenger, Douglas J. Crawford, submits this humble '*opposition*' paperwork in response to Defendant J.P. Morgan Chase Bank, N.A., aka 'Heavenly Father' (sometimes herein referred to as 'Def. Chase' or where appropriate, 'Heavenly Father'), ex parte discovery motion for termination and monetary sanctions based on allegations of misconduct that occurred an illegal video-taped deposition held after the close of discovery pursuant to a *Proposed* Order of the Court.  Plaintiff submits to '*former*' D.A. [the trial judge], currently masquerading as a Superior Court Judge, that the requested 'sanction' by our Heavenly Father does not go far enough and requests this Court to sentence Plaintiff to death pursuant to Cal. Penal Code Section 190.2 and the imposition of sanctions against Plaintiff of not less [than] $265 million dollars for the 'alleged' assault that occurred on April 21, 2014 by Plaintiff against our Heavenly Father's only begotten

6

son, Walter Johannes Robert Traver.  Plaintiff has submitted a 'Proposed' Order stating as much for [the trial judge's] rubber stamping."  (Fns. omitted.)

Throughout the opposition papers, Crawford refers to the trial judge as Traver's pet dog and employs phrases, such as, "the sick and demented [trial judge]."

In his opposition papers, Crawford appears to argue that the order requiring Matthew's deposition is invalid because the time for discovery had passed.

*Motion to Disqualify the Trial Judge*

Concurrently with filing opposition to Chase's motion for terminating sanctions, Crawford filed a statement of disqualification against the trial judge.  The statement was filed under section 170.1, subdivision (a).

Crawford alleged that the trial judge's prior rulings against him show bias; that the trial judge was a volunteer at the Ventura County mock trial competition in 1991, and that Matthew won the competition; that the trial judge keeps a picture of Robert E. Lee in his chambers, and Crawford is a relative of Lee; that the trial judge keeps a picture of his daughter in his chambers, which "portends" the question whether Matthew and his daughter were ever romantically linked; that the trial judge and another judge worked in the Attorney General's office at the same time and that Crawford ran against the other judge in a judicial election; and that the trial judge and the judge that Crawford challenged in a judicial election shared membership in the California District Attorneys Association.

The trial judge struck the statement of disqualification because it was untimely and on its face disclosed no grounds for disqualification.

*Granting Terminating Sanctions*

The trial court granted Chase's motion for terminating sanctions.  The court cited Crawford's failure to pay sanctions, harassing behavior, highly contemptuous statements made to the court, brandishing pepper spray and use of a

7

stun gun. The court described these acts as "the most outrageous behavior that I have ever heard of in my life by an attorney."

DISCUSSION

I.

Courts have the inherent authority to dismiss a case as a sanction. (*Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799.) The authority should be exercised only in extreme situations, such as where the conduct was clear and deliberate and no lesser sanction would remedy the situation. (*Ibid*.)

If ever a case required a terminating sanction, this is it. Crawford threatened to use pepper spray and a taser on opposing counsel and was openly contemptuous of the trial court. He made it impossible to continue with the litigation. Far from the trial court abusing its discretion, it would have been an abuse of discretion not to impose a terminating sanction.

Crawford argues, "Absent the Court granting Respondent's motion to compel the deposition of Matthew Crawford, which was an abuse of discretion, the Court would have no legal or factual basis for imposing termination sanctions." The argument misses the point. If Crawford believed the trial court erred in issuing a discovery order, his remedy was to seek review on appeal of the final judgment or petition this court for a writ. (See *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5.) His remedy was not to threaten opposing counsel with violence and file a contemptuous opposition to Chase's motion for sanctions.

II.

Crawford argues the trial court had no jurisdiction to grant Chase's motion for terminating sanctions because the question of the court's disqualification was never determined.

The trial court struck Crawford's statement of disqualification because it was not timely and on its face disclosed no legal grounds for disqualification.

8

(§ 170.4, subd. (b).)  Crawford does not argue the trial court erred in concluding the statement was untimely or stated no legal grounds for disqualification.

Crawford points out, however, that the trial judge also filed an affidavit containing substantive denials of the allegations in the statement of disqualification.  Crawford argues that by submitting a substantive response, the trial judge put the question of his qualification to preside at issue.  Crawford claims that until the question of the trial judge's qualification is determined independently by another judge, the trial judge was powerless to act.  (Citing, § 170.3, subd. (c)(6).)

But once the trial judge properly struck Crawford's statement of disqualification, the trial judge's substantive affidavit became irrelevant.  There was nothing for an independent judge to review.

III.

Crawford contends the trial court had no jurisdiction to transfer and consolidate with this case the small claims court actions.

The trial court ordered the small claims court cases transferred and consolidated because they were seeking penalties and damages for allegedly violating deposition subpoenas issued in the instant case.

Discovery in the instant case is governed by the Civil Discovery Act. (§ 2016.010 et seq.)  Nothing in the Civil Discovery Act allows small claims court actions as a remedy for alleged discovery violations.  When a case has been assigned to one department of the superior court, no other department of the court has the jurisdiction to interfere with the exercise of the assigned court's power. (*Williams v. Superior Court* (1939) 14 Cal.2d 656, 662.)  The small claims court is a department of the superior court in which the instant case was pending. (§ 116.210.)  But the case was not assigned to the small claims court.  Thus the small claims court has no jurisdiction over discovery matters arising in this case.

9

Crawford's reliance on *Acuna v. Gunderson Chevrolet, Inc.* (1993) 19 Cal.App.4th 1467, is misplaced. There, Acuna obtained a judgment against Gunderson for $3,500 in small claims court. Gunderson appealed and a date for a trial de novo was set. Two days before the trial de novo, Acuna filed an action against Gunderson for rescission of contract and damages. Acuna requested that the small claims trial de novo be transferred and consolidated with the superior court action. The trial court denied the motion for lack of jurisdiction. The Court of Appeal affirmed.

*Acuna* stands for nothing more than that a different department of the superior court has no jurisdiction over a case originally brought in small claims court. Just as here, the small claims court has no jurisdiction to decide matters arising in the instant superior court action. If anything, *Acuna* supports Chase.

Crawford's reliance on *New York Times Co. v. Superior Court* (1990) 51 Cal.3d 453, is also misplaced. There the question was whether the newsperson's shield law (Cal. Const., art. I, § 2, subd. (b); Evid. Code, § 1070) provides a newspaper publisher with a privilege or only immunity from contempt for refusal to comply with a civil subpoena for unpublished information. The court concluded the shield law provided only immunity from contempt and not a privilege that would shield the newspaper publisher from all sanctions. The court expressly rejected the publisher's contention that the shield law protects it against sanctions of $500 plus damages for failure to obey a subpoena as provided in section 1992. The plain language of the shield law protects only against contempt. The court stated: "Moreover, the News-Press's objection to section 1992 is largely academic. As we noted in *Mitchell* [*v. Superior Court* (1984)] 37 Cal.3d 268, 274, 'contempt is generally the only effective remedy against a nonparty witness.' The monetary sanctions under section 1992 are not effective as a practical matter. The maximum sanction is a $500 forfeiture plus actual damages, and the party aggrieved by the

10

failure to make discovery can recover the sanctions only by bringing an independent civil action. It would likely be a rare case in which a civil litigant would impose on himself the additional burden of a separate suit to recover a mere $500. The simple economics of modern litigation essentially preclude such an action." (*New York Times Co.*, at p. 464.)

Crawford points out that his small claims court actions seek damages pursuant to section 1992. He relies on the trial court's statement that a "party aggrieved by the failure to make discovery can recover the sanctions only by bringing an independent civil action." (*New York Times Co. v. Superior Court*, *supra*, 51 Cal.3d at p. 464.) But the court was speaking in the context of a newspaper publisher shielded by law from contempt. That context does not apply here. There is no reason why the parties who allegedly failed to obey Crawford's subpoenas could not have been subject to contempt proceedings in the instant action. The sanctions provided in section 1992, if warranted, could have been imposed there. The usual rule that the department to which the case has been assigned has jurisdiction applies here.

IV.

Crawford contends the trial court had no jurisdiction to sanction him $4,850 for discovery abuses.

Crawford relies on section 2023.010, subdivision (i). That subdivision provides that misuses of the discovery process include: "Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that an attempt at informal resolution has been made." (*Ibid.*)

11

Crawford claims Chase failed to file meet and confer declarations. But Crawford does not point to that place in the record where he raised an objection in the trial court. Crawford has the duty to support points raised on appeal by citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Matters not raised in the trial court will not be considered for the first time on appeal. (*Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 366.)

Crawford threatened opposing counsel with physical harm. Yet he complains about the lack of opposing counsel's attempt at informal resolution. The irony is not lost on us. Crawford conclusively demonstrated that attempting an informal resolution of disputes with him is futile, if not dangerous. The law does not require a futile act. (*Sutherland v. Barclays American/Mortgage Corp.* (1997) 53 Cal.App.4th 299, 313.)

The judgment is affirmed. Costs are awarded to respondents.

CERTIFIED FOR PUBLICATION.



GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


12

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura
_____

Law Office of Douglas J. Crawford, Douglas J. Crawford, in pro. per., for Plaintiff and Appellant.

Musick, Peeler & Garrett, LLP, Barry D. Hovis, Walter J. R. Traver, Cheryl Orr for Defendants and Respondents.