Filed 4/15/14  Dalffe Development Enterprises v. Rose CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DALFFE DEVELOPMENTAL ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> G. WILLIAM ROSE, <br><br> Defendant and Appellant. | B245417 <br><br> (Los Angeles County <br> Super. Ct. No. PC044054) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper and Stephen P. Pfahler, Judges.  Reversed with directions.

Kaufman Kaufman & Miller, Jack E. Kaufman and Lee Fineman for Defendant and Appellant.

Law Offices of Gregory S. Page and Gregory S. Page for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant G. William Rose appeals from a default judgment against him and in favor of plaintiff Dalffe Developmental Enterprises, Inc. (Dalffe). Rose argues that the trial court erred by striking his answer and entering his default when he appeared on the first day of trial, and that the subsequent default judgment cannot stand because there was no evidence he was the alter ego of another defendant, William Rose & Associates, Inc. (WRA). We conclude that the trial court abused its discretion by striking Rose's answer and entering his default for failing to participate in mediation and failing to exchange trial documents and appear at the final status conference. We reverse the judgment with directions to vacate the order striking Rose's answer and to consider whether to impose other, less severe sanctions.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Company and the Lease*

Rose was a licensed surveyor and the founder of WRA. Rose owned and controlled WRA and managed its business affairs until he sold the company to Cornel Alvarado in January 2005.[1] When Alvarado purchased WRA, he took possession of WRA's office space and agreed to assume liability for WRA's debts, including any lease payments WRA owed at the time or would owe in the future. Rose and his wife Patricia remained as employees of WRA for five years.

Dalffe owned the premises leased by WRA. On February 10, 2005 Dalffe and WRA executed a commercial lease whereby Dalffe leased to WRA approximately 4,500 square feet of custom office space in California City. The term of the lease was three years, from March 1, 2005 to February 28, 2008, and the monthly rent was $3,825,

---

[1]    WRA and Alvarado are not parties to this appeal.

excluding any late fees. The lease provided that any holdover rent would be twice the monthly base rent stated in the lease.

Shortly before the lease ended Alvarado wrote Dalffe to confirm that the lease term would expire on February 28, 2008, and to advise that WRA intended to vacate the premises no later than March 1, 2008. WRA, however, did not leave on March 1, but stayed as a holdover tenant until October 29, 2008. WRA did not make any payments of rent or fees due from February 1, 2008 through October 29, 2008.

B.    *The Lawsuit*

On November 12, 2008 Dalffe filed this action against Rose, Alvarado, and Jon R. Reno to recover over $144,000 Dalffe claimed the defendants owed under the lease.[2] An attorney named H. Joseph Nourmand represented Rose, Alvarado, WRA, and Reno, and filed on their behalf a demurrer to the complaint, which the trial court sustained in part with leave to amend.

On May 12, 2009 Dalffe filed its operative first amended complaint. Dalffe asserted causes of action for breach of written lease, fraud and deceit based on representations by the defendants that they intended to pay the amounts due under the lease while they occupied the property after the lease term expired, and, against Rose and Alvarado only, unjust enrichment based on their use of the premises for personal business from February 1, 2008 to October 29, 2008. On June 15, 2009 Nourmand filed an answer on behalf of WRA, Rose, and Alvarado. He then filed a motion to be relieved as counsel, which the court granted.

C.    *Discovery and Trial Preparation*

Dalffe propounded written discovery in 2009 to WRA, Rose, and Alvarado, much of which related to Dalffe's claim that Rose and Alvarado were alter egos of WRA.

---

[2]    Dalffe dismissed the action against Reno without prejudice on June 25, 2009.

3

None of the defendants ever responded to the discovery. There is no evidence in the record that Dalffe ever moved to compel responses to this discovery, although counsel for Dalffe threatened at least once to do so.

On August 25, 2009 the court held a case management conference. Alvarado, representing himself, was the only defendant who appeared. The court set the case for a final status conference on April 23, 2010 and a five-day jury trial on May 3, 2010. The court also ordered the parties to complete mediation by April 15, 2010. The parties never participated in a mediation.

The day before the April 23, 2010 final status conference, counsel for Dalffe, Gregory S. Page, filed a declaration describing the defendants' failure to comply with court orders and court rules. Page stated that, although he sent the defendants all of the mediation information, none of the defendants responded to his letters seeking to schedule a mediation. Page also stated that he gave the defendants notice of the court's rulings at the August 25, 2009 case management conference, including the dates the court had set for the final status conference and the trial. Page stated, "I have received absolutely no cooperation from defendants in preparing this matter for trial and defendants have refused to respond to the written discovery propounded by plaintiff." Page reported that he sent several letters to the defendants regarding their obligations to meet and confer in order to prepare a joint witness list and exhibit list and to attempt to reach agreement on the admissibility of exhibits at trial. Page again received no response. Page also filed a list of 85 trial exhibits.

D.    *Final Status Conference*

At the final status conference on April 23, 2010, Alvarado again was the only defendant to appear. The trial court, Hon. Barbara M. Scheper, advised Alvarado that, as a corporation, WRA had to be represented by counsel in order to participate in the litigation. The court stated that because Rose had failed to appear at the final status conference, the court was considering sanctions.

4

The court set for hearing on May 3, 2010 an order to show cause "regarding sanctions, including entry of judgment against" WRA and Rose. The court also set an order to show cause "regarding defendant Cornel Alvarado's failure to file Final Status Conference documents and all defendants' failure to participate in court ordered mediation . . . ." The court stated that "[s]anctions may include [the] striking of the answer and entry of default" and ordered counsel for Dalffe to give notice. The notice stated that the court had issued an order to show cause regarding why sanctions should not be imposed against Rose and WRA for failing to appear at the final status conference, and an order to show cause why the court should not enter the defaults of Rose and WRA for failure to comply with the court's previous orders and rules of court. The notice also stated that potential sanctions included striking the defendants' answers and entering their defaults.

E.    *Entry of Default*

On May 3, 2010, the date of the trial and the hearing on the orders to show cause, Rose and Alvarado appeared. No one appeared for WRA. The trial court pointed out that Rose had not attended the final status conference and had not filed an exhibit list or a witness list. The court stated that it was "considering just entering a default, . . . because you have not done anything that is required." The court stated that as a result of the defendants' failure to identify their trial documents, Dalffe could ask the court to preclude the defendants from introducing any evidence in their defense, which would ultimately result in a finding of liability.

When the court asked Rose why he had not attended the final status conference and exchanged trial documents, Rose stated that he "didn't know the request existed" and that he had not received any notice to appear on May 3 or to produce documents. Rose explained to the court that he had never been served, had never retained or been represented by an attorney, and had never received anything about the lawsuit. The court responded that it had documentation showing Nourmand had represented WRA, Rose, and Alvarado. The court stated, "So as far as the court is concerned, all of those parties,

yourself included, Mr. Rose, were represented by that attorney. That attorney appeared on your behalf and challenged the complaint. . . . Now, if that attorney didn't communicate with you, we have another potential lawsuit here for malpractice, but that is not before the court." The court stated that it understood that Rose was claiming he was not a proper defendant, but the court could not decide that issue based solely on the basis of Rose's pretrial statements in court. Rose stated he had never met Nourmand and that he had not received anything at the address Nourmand had provided to the court when he withdrew as counsel. The trial court told Rose, "What is before me is now an attorney properly appearing on your behalf was ordered to go to mediation and, as I understand it, nobody appeared for that. So that in and of itself is sanctionable conduct." The court again stated that Rose and Alvarado were named as defendants and had been given "proper notice . . . as to all that was required to be done and the dates it was to be done," but they had done nothing to comply with the court's orders.

Page told the court that he had served Rose and Alvarado on April 5 with demands under Code of Civil Procedure section 1987[3] to appear for trial on May 3 and produce the documents Dalffe had requested in discovery. Page stated that neither Rose nor Alvarado had brought any documents to court, although Alvarado stated that he had brought the lease. The court told Rose and Alvarado that "to come up with arguments or claims or documents for the first time at the day of trial is not fair under the rules."[4]

At the conclusion of the hearing, the court stated, "I think that the plaintiffs have established more than sufficient evidence for the court to order that the answer be

---

**3** Unless otherwise specified, all further section references are to the Code of Civil Procedure.

**4** Alvarado conceded that he owed Dalffe money under the lease but argued that he did not owe as much as Dalffe claimed he did. The court stated that Alvarado had not brought any calculations or documents showing that he owed the amount he claimed he did, that his failure to bring such documentation was a violation of the rules, and that allowing him to produce documents for the first time on the day of trial would be unfair to Dalffe.

6

stricken and that the defaults be entered." The court ruled that it would strike the answers of WRA, Rose, and Alvarado "and enter a default for their failure to participate in the mediation, for the corporation's failure to retain counsel after many months' opportunity to do so, and failure to appear at the final status conference and today's date. Mr. Rose's sanctionable conduct is the failure to appear at the mediation, the final status conference, and the failure to present the necessary trial documents." The court then discussed with counsel for Dalffe the scheduling and manner of conducting the default prove-up hearing, scheduled a hearing for June 17, 2010 on an order to show cause regarding entry of default judgment, and directed Dalffe's counsel to give notice.

The court's May 3, 2010 minute order stated that the court struck WRA's answer and entered its default "for failure to participate in mediation and failure to hire counsel," struck Rose's answer and entered his default "for failure to participate in mediation, failure to appear at the final status conference, and failure to produce trial documents," and struck Alvarado's answer and entered his default "for failure to participate in mediation and failure to produce trial documents."[5]

F.     *Rose's Motion for Relief from Default*

In September 2010 Rose retained (new) counsel and filed a motion for relief from default pursuant to sections 473, subdivision (b), and 473.5,[6] supported by his declaration and the declaration of his new attorney, Jack E. Kaufman. Rose argued that he "had no

---

[5]     On July 20, 2010 WRA filed a Chapter 11 bankruptcy case. Dalffe advised the trial court that it would not seek a default judgment against WRA until Dalffe obtained relief from the automatic stay.

[6]     Section 473, subdivision (b), authorizes the court to "relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Section 473.5, subdivision (a), provides that "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."

knowledge of this action against him until a few days before May 3, 2010" because he "was not served, either by personal service or by constructive service, with the complaint." Rose also filed proposed witness and exhibit lists and a declaration from Nourmand. Nourmand stated that Reno had instructed him to represent Reno, WRA, Alvarado, and Rose, and that, on behalf of the defendants, Nourmand had filed a demurrer and motion to strike in January 2009 and an answer to the first amended complaint in June 2009. He stated that he had "never met or directly communicated with" Rose, other than to send Rose notice of the court's order relieving him as counsel.

Dalffe opposed the motion with declarations from Page and Dalffe's president, Timothy Rifenberg. Page stated that Rose's claim that he had no knowledge of the lawsuit until a few days before the trial date of May 3, 2010 was not true. Page pointed out that Rose admitted that he and his wife Patricia had continued to work at WRA's offices after January 1, 2005, and during that time Page had served various notices and had mailed numerous letters to Rose at that address. Page also stated that Rose's wife Patricia had called him in August 2009 to negotiate a settlement and, during the conversation, confirmed that Rose was a defendant in the litigation. Rifenberg stated that he too had a telephone conversation with Patricia in August 2009, during which she acknowledged the existence of the litigation and suggested to Rifenberg that the parties settle the case for 5 to 10 cents on the dollar.

The trial court denied Rose's motion for relief from default. The court found "it hard to believe" that Rose did not learn he was a party to the lawsuit until three days before the May 3, 2010 trial date. The trial court said to counsel for Rose, "what you are telling me is Mr. Rose is either lying to the court or he is continuing to accept the word [of] Mr. Alvarado who has already been shown to be less than truthful about this." The court stated that it did "not believe the submissions by Mr. Rose and the others . . . as credible at all." The court also found that Dalffe would be prejudiced if the court vacated Rose's default. The court concluded that there was no "credible reason to set aside the default."

8

G.      *Default Prove-Up and Default Judgment*

The trial court continued the default prove-up hearing and order to show cause regarding the default judgment several times to allow Dalffe an opportunity to obtain documents from WRA, Rose, and Alvarado.  Finally, on March 12, 2012, Dalffe submitted its default prove-up package to the court, which included, for purposes of showing that Rose was an alter ego of WRA, certified copies of bank documents showing a $150,000 loan Rose had obtained under the name of WRA.

In his default judgment declaration, Rifenberg stated that, based on his involvement with the defendants, it was his understanding that sometime after January 1, 2005, Alvarado became the sole and controlling shareholder of WRA, but that Alvarado was unable to pay Rose the agreed purchase price for the company.  According to Rifenberg, as a result Rose and his wife retained all of the shares of stock issued by WRA.  After January 1, 2005, Alvarado was acting as an officer, manager, and owner of WRA.  Rifenberg gave detailed calculations of the $148,099.91 that Dalffe claimed as damages.  Rifenberg also calculated that the defendants owed Dalffe $48,091.61 in prejudgment interest under Civil Code sections 3287 and 3289, subdivision (b), $34,125 in attorneys' fees, and $1,737.14 in recoverable costs.  Dalffe sought a total default judgment, after a credit for a $3,825 security deposit, in the amount of $228,228.66.

On August 23, 2012 the trial court, Hon. Stephen P. Pfahler, entered judgment in favor of Dalffe and against Rose, Alvarado, and WRA in the amount of $194,103.66.  Dalffe served notice of entry of judgment on September 18, 2012.  Rose filed a timely notice of appeal on November 16, 2012.

**DISCUSSION**

Much of the parties' briefing focuses on whether Dalffe provided sufficient evidence to support the alter ego finding underlying the default judgment against Rose.  Before we can review the propriety of the default judgment, however, we must address Rose's contention that the trial court should not have entered his default in the first place.

9

We conclude that the trial court abused its discretion by striking Rose's answer and entering his default as a sanction for his failure to participate in mediation by the court-ordered mediation completion date and his failure to exchange trial documents prior to, and then attend, the final status conference.

The trial court has authority to impose terminating sanctions, such as striking an answer,[7] a complaint, or other pleading, for violation of a court order, but the court must exercise the authority to impose such a drastic remedy cautiously and only in extreme cases where less severe alternatives are not available, have been exhausted, or would be ineffective. (See *Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 916 ["although the discretionary power to dismiss with prejudice has been upheld in this state, its use has been tightly circumscribed"].) Supreme Court precedent "acknowledges the existence of inherent power to dismiss an action for misconduct violating established procedures or a court order, but limits its exercise to 'extreme circumstances' of deliberate misconduct when no lesser sanction would be effective to cure the harm." (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 760; see *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364, fn. 16 ["[t]erminating sanctions . . . '"have been held to be an abuse of discretion unless the party's violation of the procedural rule was willful [citations] or, if not willful, at least preceded by a history of abuse of pretrial procedures, or a showing [that] less severe sanctions would not produce compliance with the procedural rule"'"]; *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799 ["[t]rial courts should only exercise this authority [to impose terminating sanctions] in extreme situations, such as when the conduct was clear and deliberate, where no lesser alternatives would remedy the situation . . . and when the court issues a directive that the party fails to obey"]; *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1399 ["'[p]reventing parties from presenting their cases on the merits is a drastic measure; terminating sanctions should only be ordered when there has been previous

---

[7]     "[S]triking a defendant's answer and entering its default [are] terminating sanctions . . . ." (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 610.)

10

noncompliance with a rule or order and it appears a less severe sanction would not be effective'"].) Consistent with the case law, Government Code section 68608, subdivision (b), provides that "[j]udges shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. . . ." (See *Tliche v. Van Quathem* (1998) 66 Cal.App.4th 1054, 1061.)

"We review an order imposing sanctions for an abuse of discretion." (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1217; see *Elkins v. Superior Court*, *supra*, 41 Cal.4th at pp. 1363-1364.) The discretion to impose sanctions, "monetary or otherwise, . . . must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to the current circumstances." (*Winikow v. Superior Court* (2000) 82 Cal.App.4th 719, 726.)

Failing to appear at a final status conference and to exchange witness and exhibit lists may justify monetary sanctions, including monetary sanctions to compensate the opposing party for the attorneys' fees that party incurred in appearing at a final status conference where nothing could be accomplished. Such misconduct may also justify a further court-ordered pretrial or final status conference among the attorneys and self-represented parties, perhaps at the office of counsel for the party that appeared at the final status conference and at the expense of the offending party. The court may also order a continuance of the trial, with certain associated costs to be paid by the party who failed to prepare for and appear at the final status conference. In egregious cases, such as failing to appear at multiple final status conferences in violation of one or more court orders and after unsuccessful imposition of monetary or other lesser sections, the court may consider more severe sanctions, such as issue or evidentiary sanctions, precluding the offending party from calling witnesses or introducing documents into evidence at trial, or even an order finding against the offending party on liability so that the only issue at trial is the amount of damages. (See *Thomas v. Luong* (1986) 187 Cal.App.3d 76, 81-82.) One or

11

more of these sanctions may have been progressively appropriate for Rose's misconduct. But to strike an answer for the kind of relatively minor pretrial infractions committed by Rose that were understandably frustrating but easily remediable with less drastic measures was out of proportion to the nature and consequences of the misconduct and an abuse of discretion. (See *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 97 ["[s]anctions which have the effect of granting judgment to the other party on purely procedural grounds are disfavored"].)

Similarly, failing to complete mediation by a court-ordered completion date may justify some kind of monetary sanction, or a trial continuance over the offending party's objection. (See *Ellerbee v. County of Los Angeles*, *supra*, 187 Cal.App.4th at p. 1216 [affirming monetary sanctions of $6,194 against defendants for "their unexcused failure to participate in a court-ordered mediation in violation of" local and state rules]; *Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.* (2008) 163 Cal.App.4th 566, 572, 573 ["the unauthorized failure of a party, the party's attorney, or a representative of the party's insurance carrier, to attend a court-ordered appellate mediation necessarily constitutes" sanctionable conduct, but the court declined to impose the requested sanctions of "$14,200 in attorney fees and $4,845.25 in mediation fees and expenses of participation in the mediation"]; *Sigala v. Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 673, 674 [striking a request for trial de novo after arbitration for failure to attend mandatory settlement conference was excessive because "the ultimate sanction is rarely, if ever, proper in the first instance," but the trial court could impose appropriate monetary sanctions]; *City of El Monte v. Takei* (1984) 158 Cal.App.3d 244, 250 [trial court did not abuse its discretion in imposing monetary sanctions of $750 against an attorney and an insurance carrier where the carrier had not appeared at settlement conference on the attorney's advice].) Such a monetary sanction may even be appropriate where, as here, Dalffe did not incur any significant fees or mediation costs (other than perhaps a few letters or phone calls trying to arrange a mediation) because Rose did not respond to counsel for Dalffe's attempts to schedule a mediation. Again, these kinds of sanctions would have been appropriate here. But "imposing the ultimate

12

sanction of striking defendant's answer and entering his default" (*Thomas v. Luong*, *supra*, 187 Cal.App.3d at p. 80) for failing to complete mediation by the completion date was an abuse of discretion. (See *Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 503 [trial court abused its discretion in dismissing action for noncompliance with "fast track" deadlines]; *Evarone v. Twentieth Century Hosts, Inc.* (1979) 98 Cal.App.3d 90, 93 [trial court "erred in invoking the ultimate sanction of striking defendant's answer" for failing to attend settlement conference].) "In light of . . . the procedural nature of the missed deadline, the sound exercise of discretion required the court to consider and use other less extreme sanctions" before striking Rose's answer and entering his default. (*Moyal*, *supra*, at p. 503.)

To the extent the trial court's order could be considered a discovery sanction for failure to exchange documents prior to trial (although the court did not state it was imposing a sanction under the discovery statutes), striking Rose's answer was excessive. "'California discovery law authorizes a range of penalties for conduct amounting to "misuse of the discovery process,"' including terminating sanctions. [Citation.]" (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.) Under section 2023.030, subdivisions (d)(1) and (d)(4), however, a court may only strike an answer and enter a defendant's default for the "defendant's extreme misuse of the discovery process." (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 864; see 2 Witkin, Cal. Evidence (5th ed. 2012 supp.) Discovery, § 255, p. 1232 ["[t]he trial judge does not have unrestricted power to select any of the statutory sanctions, and may not invoke the penalty of striking out a pleading and entering a default judgment if a less drastic remedy is adequate"].) Generally, and subject to exceptions not applicable here, in order for the court to impose a terminating sanction for misuse of the discovery process, "there must be a failure to obey an order compelling discovery." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1423.)

Here, the trial court did not cite any extreme discovery abuse by Rose as the basis for striking his answer and entering his default, nor did the court's orders to show cause give notice that the court might strike Rose's answer because of any discovery abuse.

13

The trial court also made no finding that Rose's actions were deliberate or that any lesser sanction would be "inadequate to protect the fairness of the trial." (*Stephen Slesinger, Inc. v. Walt Disney Co.*, *supra*, 155 Cal.App.4th at p. 762; see *Morgan v. Ransom* (1979) 95 Cal.App.3d 664, 670 ["[t]he sanction of peremptory dismissal, without consideration of the merits, is fundamentally unjust unless the conduct of a plaintiff is such that the delinquency interferes with the court's mission of seeking truth and justice"].) Finally, Dalffe never filed a motion to compel discovery responses or production of documents, and the trial court never issued an order compelling Rose to comply with his discovery obligations. There was no order compelling discovery for Rose to disobey.

**DISPOSITION**

The judgment is reversed. The trial court is directed to vacate its order striking Rose's answer and entering his default, and to consider whether any lesser sanctions are appropriate. Rose is to recover his costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14