Filed 6/18/14  Stutz Artiano et al. v. Larkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STUTZ ARTIANO SHINOFF & HOLTZ, APC, | D063801 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2007-00076218-CU-DF-CTL) |
| MAURA LARKINS, | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed as modified.

Maura Larkins, in pro. per., for Defendant and Appellant.

Stutz Artiano Shinoff & Holtz, Ray J. Artiano, James F. Holtz, and Scott Ingold for Plaintiff and Respondent.

INTRODUCTION

In April 2009, after the trial court found that Maura Larkins had published defamatory statements on her Web sites regarding the law firm of Stutz Artiano Shinoff & Holtz, APC (the Stutz Firm), Larkins agreed to a stipulated injunction that restrained her from publishing the statements at issue and also prohibited her from publishing future statements accusing the Stutz Firm or its lawyers of "illegal conduct or violations of law, unethical conduct, lack of professional competence or intimidation." Over the next year, the trial court found on three separate occasions that Larkins continued to violate the April 2009 injunction. In March 2010, the court imposed monetary sanctions and warned Larkins that further noncompliance would result in the court striking her answer and entering a default as a terminating sanction.

In 2012, more than three years after the issuance of the original stipulated injunction, the trial court found that Larkins continued to violate the injunction. The court struck Larkins's answer and the clerk entered her default. After a prove up hearing, the trial court entered a default judgment against Larkins in the amount of $43,364.94, which included $10,000 in punitive damages. The trial court subsequently denied Larkins's combined motion to set aside the judgment and to dissolve the stipulated injunction.

On appeal, Larkins contends that the trial court erred in entering a default judgment, refusing to set aside the judgment, and failing to dissolve the injunction. We conclude that the trial court did not err in entering a default judgment as a terminating

sanction against Larkins, in light of her repeated violations of the stipulated injunction and the court's enforcement orders. We further conclude that the trial court did not err in refusing to set aside the default judgment or dissolve the injunction. We modify the default judgment to strike the punitive damage award, given the absence of evidence pertaining to Larkins's financial condition, and affirm the judgment as so modified.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *The Stutz Firm's first amended complaint*

In July 2008, the Stutz Firm filed a first amended complaint against Larkins that contained causes of action for defamation per se, declaratory relief, and injunctive relief. The Stutz Firm alleged that Larkins had created a Web site known as the "San Diego Education Report," on which Larkins had made numerous specific defamatory statements concerning the Stutz Firm and its attorneys. The Stutz Firm sought damages, including punitive damages, a declaration that Larkins had published defamatory statements concerning the Stutz Firm, and a "preliminary and/or permanent injunction preventing [Larkins] from continuing to publish or republishing those statements which the court declares to be defamatory."

---

[1]    Subparts A-G of this part are drawn largely from our prior opinion in this matter. (See *Stutz Artiano Shinoff & Holtz v. Larkins* (Aug. 5, 2011, D057190) [nonpub. opn.] (*Stutz I*).)

B.      *The trial court grants the Stutz Firm's motion for summary adjudication*

In October 2008, the Stutz Firm filed a motion for summary adjudication in which it argued that various statements on Larkins's Web sites were defamatory as a matter of law. The Stutz Firm requested that the court "declare that certain statements on [Larkins's] [Web sites] are defamatory and enjoin [Larkins] from publishing these statements."

In March 2009, the trial court entered an order granting the Stutz Firm's motion for summary adjudication. In its order, the court found that the Stutz Firm had established its claim for defamation per se as a matter of law, noting that the Stutz Firm had established that none of the statements on Larkins's Web sites concerning the Stutz Firm were true. The court also ruled that the Stutz Firm was entitled to an injunction precluding Larkins from publishing "the defamatory statements alleged in [the Stutz Firm's] first amended complaint." The court stated that "the case [would] proceed to trial on the amounts of compensatory and punitive damages to be awarded to [the Stutz Firm] according to proof."

C.      *The stipulated injunction*

On April 6, 2009, the day set for the trial on damages, the parties reached a tentative settlement of the case. Pursuant to the parties' stipulation, the court entered a permanent injunction that states in relevant part:

4

"1. [The Stutz Firm]² is entitled to an injunction enjoining and restraining [Larkins] from continuing to publish or republishing by any method or media, including but not limited to all electronic data, Web sites and Web pages, the defamatory statements alleged in [the Stutz Firm's] first amended complaint pertaining to [the Stutz Firm] and any of its lawyers past or present, and future publication of statements with regard to [the Stutz Firm] and its lawyers accusing illegal conduct or violations of law, unethical conduct, lack of professional competence or intimidation.

"2. [Larkins] shall comply with, complete the removal of, and/or undertake all necessary steps for the removal of the defamatory statements as specified above no later than ten (10) days from the date of this order."

At the hearing at which the court entered the injunction, the parties agreed that the action would be stayed for a period of three months to allow Larkins to demonstrate compliance with the injunction. After the three-month period, The Stutz Firm would be permitted to seek damages based on Larkins's prior defamatory speech, if it so desired.

D.    *The trial court grants the Stutz Firm's motion to enforce the stipulated injunction*

In July 2009, the Stutz Firm filed a motion to enforce the permanent injunction. In its brief, the Stutz Firm claimed that Larkins continued to display on her Web sites numerous statements that violated the April 6 injunction. On August 7, 2009, the trial court granted the Stutz Firm's motion to enforce the April 6 injunction. The court found that "the disputed statements are in violation of the permanent injunction entered on April 6, 2009. [Larkins] is ordered to remove all the disputed statements from her [Web sites] within 48 hours."

---

2      Although the order states "Defendant," it is clear that the court intended to refer to the Stutz Firm.

E.    *The trial court's modification of the injunction*

In October 2009, the Stutz Firm filed a motion to strike Larkins's answer and to enter a default against her.  In its motion, the Stutz Firm maintained that Larkins was continuing to publish statements that violated the stipulated injunction and the court's August 7 order.  The trial court held a hearing on October 30, at which the court explained that it intended to modify the stipulated injunction to prevent Larkins from making "any mention" of the Stutz Firm on her Web sites.  The court reasoned that Larkins continued to attempt to circumvent the stipulated injunction by making slight wording changes to the statements on her Web sites, stating "it is crystal clear to [the court] at this point that [Larkins] is unable or unwilling to modify her [Web sites] in any good-faith attempt to remove reference to that law firm."  The court also stated, "What I'm trying to do is not get to the point where I have to enter default and strike an answer and award damages, assuming they're proved up, in the default process.  But right now, what I'm trying to do is make a bright-line rule that there's no way anybody can misinterpret."

On December 11, 2009, the trial court entered the following order, based on the October 30th hearing:

> "1. The Court's April 6, 2009, Order on Permanent Injunction ('Injunction'), stipulated to by the parties . . . enjoined and restrained [Larkins] from publishing accusations of illegal conduct or violations of law, unethical conduct, lack of professional competence or intimidation pertaining to [the Stutz Firm] and any of its lawyers, past or present.

> "2. On August 7, 2009, at 10:30 a.m., [the Stutz Firm's] Motion to Enforce Permanent Injunction Against [Larkins] came on regularly

6

for hearing before this Court. The Court granted [the Stutz Firm's] motion, finding that the disputed statements challenged therein were in violation of the Injunction and ordering [Larkins] to remove all the disputed statements from her [Web sites] within 48 hours.

"3. The Court finds that [Larkins] has not complied with the Injunction or this Court's orders and continues to attempt to circumvent the Injunction. The Court further finds that [Larkins] has been unwilling to modify her [Web sites] in good faith.

"4. Due to [Larkins's] continued circumvention of this Court's orders, the Court hereby modifies the Injunction to prevent [Larkins] from making any mention of [the Stutz Firm] or any of its attorneys, past or present. [Larkins] is enjoined and restrained from continuing to publish or republishing, by any method or media, including but not limited to all electronic data, [Web sites] and Web pages, any statements pertaining to [the Stutz Firm] and any of its lawyers, past or present, and future publication of statements with regard to [the Stutz Firm] and its lawyers. [Larkins] is ordered to remove all mention of [the Stutz Firm] and any of its lawyers, past or present, from her [Web sites] or [Web sites] under her control within twenty days."

F.     *The trial court's order holding Larkins in contempt and requiring her to pay $3,000 in sanctions*

In January 2010, the Stutz Firm filed an ex parte application to enforce the modified injunction, to hold Larkins in contempt, and to impose sanctions. Larkins filed an opposition. The trial court found Larkins in contempt and ordered her to pay $3,000 in sanctions to the Stutz Firm for fees and costs incurred in "enforcing the injunction ."[3] In addition, the court stated:

"If [Larkins] does not bring her [Web sites] into compliance with the Court's previous orders by April 9, 2010 and/or fails to timely pay

---

[3]     The court did not specify whether it was referring to the April 6 stipulated injunction or the December 11 modified injunction.

7

the sanctions ordered, the Court will be forced to strike [Larkins's] answer and take her default. In which case, [the Stutz Firm] will be free to obtain a judgment against [Larkins] for damages incurred as a result of [Larkins's] violations of the injunctions."

G.      Stutz I

Larkins appealed from the trial court's December 11, 2009 order.  On appeal, Larkins contended that "the trial court's modified injunction constitutes an unconstitutional prior restraint."[4]  In *Stutz I*, we agreed that the December 11, 2009 modified injunction was an unconstitutional prior restraint.  We reversed the modified injunction, and "remand[ed] the matter to the trial court to allow the court to consider whether to exercise its authority to coerce compliance with the stipulated injunction and/or to punish Larkins for her failure to comply with the stipulated injunction, in a manner consistent with the law and the views expressed in this opinion."  (*Stutz I*, *supra,* D057190.)

H.      *The May 30, 2012 order*

On remand from *Stutz I, supra*, D057190, in October 2011, the Stutz Firm filed a motion to strike Larkins's answer and enter a default.  In its motion, the Stutz Firm argued that Larkins continued to fail to comply with the original April 6, 2009 stipulated injunction.  The Stutz Firm supported its motion with printouts from Larkins's Web site that contained statements that it contended violated the original stipulated injunction.

---

4      Larkins did not raise any challenge to the trial court's findings that she violated the stipulated injunction and the court's prior order to comply with the stipulated injunction, nor did she challenge the trial court's award of sanctions. (See *Stutz I*, *supra*, D057190 at fns. 2, 10.)

8

Larkins opposed the motion.  After extensive briefing and oral argument, the trial court found that "[Larkins] continues to post statements on her [Web sites] that violate the parties' original stipulated injunction."  The court further found that Larkins continued to "attempt[] to circumvent the stipulated judgment by removing some statements, but then [replacing] those statements with other statements that also violate the injunction." The court also detailed its prior efforts to obtain compliance with the stipulated injunction, and stated:

> "[T]he court will defer striking [Larkins's] answer for 45 days in order that [Larkins] have opportunity to bring the [Web sites] and all of [their] content into compliance with the original stipulated injunction.  If [Larkins] fails to do so, if the [Web sites] remain[] in violation of the parties agreed upon injunction, the Court will have no further option but to strike [Larkins's] answer and allow [the Stutz Firm] to proceed to judgment by default."[5]

The court also imposed sanctions in the amount of $5,000 payable to the Stutz Firm.[6]

I.   *The August 10, 2012 order*

After further briefing and oral argument concerning the status of Larkins's Web sites, on August 10, 2012, the court entered an order striking Larkins's answer as a terminating sanction based on her continuing failure to abide by the terms of the original stipulated injunction.  In its order, the court detailed its prior attempts to obtain Larkins's compliance with the stipulated injunction and found that Larkins "has continued to

---

5    The court's order in two places refers to "plaintiff," but it is clear the court was intending to refer to "Larkins."

6    Stutz later waived payment of these sanctions.

9

publish and republish statements in violation of the April 6, 2009 Stipulated Injunction as evidenced by [The Stutz Firm's] briefs and exhibits on file in this action as late as June 5, 2012 and July 5, 2012."  The court further found that "Larkins['s] actions are willful and deliberate, and have caused unnecessary delay, wasted trial court resources, caused opposing parties to incur unnecessary expenses, and to suffer ongoing damages . . . ."

J.     *The default and the default judgment*

The clerk entered Larkins's default in September 2012.  After a prove up hearing with respect to damages, the trial court entered a default judgment against Larkins in the amount of $43,364.94.

K.     *The motion to set aside the judgment and dissolve the injunction*

Larkins filed a combined motion to set aside the default judgment pursuant to Code of Civil procedure section 473 and to dissolve the injunction.  The trial court denied the motion in its entirety.

L.     *The appeal*

Larkins appealed from the default judgment and the order denying her motion to set aside the default judgment[7] and dissolve the stipulated injunction.[8]

---

7      " ' "While a denial of a motion to set aside a previous judgment is generally not an appealable order, in cases where the law makes express provision for a motion to vacate such as under Code of Civil Procedure section 473, an order denying such a motion is regarded as a special order made after final judgment and is appealable under Code of Civil Procedure section 904.1, subdivision [ (a)(2) ]." ' [Citation.]" (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 1004, 1008.)

8      An order refusing to dissolve an injunction is appealable.  (Code Civ. Proc., § 904.1, subd. (a)(6).)

10

III.

DISCUSSION

A.   *The trial court did not err in entering a default judgment in favor of the Stutz Firm, but the judgment must be modified to strike the punitive damage award*

Larkins claims that the trial court erred in striking her answer and entering a default judgment against her as a terminating sanction. Larkins raises several contentions in support of this claim, each of which we consider below.

1.   *The April 6, 2009 injunction is not unconstitutional on its face*

Larkins contends that the "April 6, 2009 injunction is unconstitutional on its face."[9] Larkins's contention raises a question of law, which we review de novo. (See *Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 204 [facial challenge to the constitutionality of a law is reviewed de novo].)

" '[I]t is possible to waive even First Amendment free speech rights by contract.' " (*Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 528.) For example, a

---

[9]   We assume for purposes of this decision that Larkins may raise this challenge in this appeal, notwithstanding the fact that she did not appeal from the injunction, pursuant to the theory that "a party cannot be held in contempt for violating an order that a trial court issued in excess of its jurisdiction." (*Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1172 (*Wanke*).) While Larkins is not appealing from a contempt judgment, she is appealing from a default judgment that the trial court entered based on its finding that she had failed to comply with the stipulated injunction. Under these circumstances, we assume that Larkins may raise her challenge to the facial constitutionality of the April 6 2009 injunction in this appeal. (See *id*. at p. 1172, fn. 24 ["we assume for purposes of this decision that, as with contempt proceedings, a party may defend against a motion to enforce a settlement agreement based on a purported violation of an injunction on the ground the injunction was issued in excess of the trial court's jurisdiction, and is therefore invalid"].)

11

party who signs a confidentiality provision may not breach that agreement in the name of the First Amendment. (See *id*. at p. 519 ["[W]hile the County claims that it had a First Amendment right to make the disclosures, any such right was waived by the confidentiality provision"].) Similarly, a party who agrees to protect a trade secret does not have a constitutional right to divulge that secret. (See *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 881 (["The First Amendment does not prohibit courts from incidentally enjoining speech in order to protect a legitimate property right"].)

In agreeing to the terms of the stipulated injunction, Larkins agreed that she would not publish statements "with regard to [the Stutz Firm] and its lawyers accusing illegal conduct or violations of law, unethical conduct, lack of professional competence or intimidation." While Larkins had a First Amendment right to make such statements prior to agreeing to the injunction (to the extent they were not defamatory), she relinquished that right in agreeing to the stipulated injunction.[10] Accordingly, we conclude that the stipulated injunction is not facially invalid.[11]

---

[10] We are not aware of any authority, and Larkins has cited none, that prohibits a party from agreeing not to publish statements about another party that the first party has defamed.

[11] Larkins implicitly acknowledged the facial validity of the injunction in her opposition to Stutz's October 2011 motion to strike her answer by arguing, "It is false and preposterous to claim that [Larkins] voluntarily gave up her First Amendment Rights (*beyond the short list of opinions she agreed not to express*) when she signed the injunction." (Italics altered.)

12

2. *Larkins has not demonstrated that the April 6, 2009 injunction is the product of extrinsic fraud*

Larkins claims that the April 6, 2009 injunction is invalid because it is the product of extrinsic fraud.[12] Specifically, Larkins contends:

> "The April 6, 2009 injunction was achieved by fraud because [¶] [the Stutz Firm] clearly agreed on April 6, 2009 that the injunction would merely prevent [Larkins] from stating specific opinions, but in actuality [the Stutz Firm] intended the injunction to force [Larkins] to conceal, even from the proper authorities, all illegal, unethical, intimidating and incompetent acts that [the Stutz Firm] or its attorneys ever had committed or ever would commit."

Distilled to its essence, Larkins contends that the Stutz Firm committed fraud because its interpretation of the scope of the stipulated injunction is broader than hers. "[F]raud or deceit encompasses the suppression of a fact by one who is bound to disclose it, or the suppression of a fact that is contrary to a representation that was made." (*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 255.) Larkins has not identified any facts that the Stutz Firm was required to disclose, nor has she demonstrated that the Stutz Firm suppressed any facts, contrary to its representations. Accordingly, we conclude that Larkins has not demonstrated that the April 6, 2009 injunction was the product of extrinsic fraud.

---

[12] Larkins may raise her contention that the stipulated injunction is void because it was obtained by extrinsic fraud notwithstanding the fact that she did not appeal from the injunction. (See *311 South Spring Street Co. v. Department of General Services* (2009) 178 Cal.App.4th 1009, 1015 [" ' "a judgment, though final and on the merits, has no binding force and is subject to collateral attack . . . where it is obtained by extrinsic fraud" ' "].)

13

3. *Larkins is not entitled to reversal of the default judgment based on alleged error by the trial court in issuing the April 6, 2009 injunction*

In addition to arguing that the April 6, 2009 injunction is *facially* invalid and the product of extrinsic fraud, Larkins attempts to raise several arguments in support of her contention that the trial court *erred* in entering the injunction. For example, Larkins contends that the only reason that she agreed to the injunction was because the trial court had previously erred in granting summary adjudication in favor of the Stutz Firm.

While a party may successfully defend against the enforcement of an injunction on the ground that the injunction is facially unconstitutional or the product of extrinsic fraud, and therefore was issued in excess of the trial court's jurisdiction, a party "may not defend against enforcement of a court order by contending merely that the order is legally erroneous." (*Wanke, supra*, 209 Cal.App.4th at p. 1172 [explaining distinction between the two types of claims].) That is because " '[a]n injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within its jurisdiction, must be obeyed by them *however erroneous the action of the court may be. . . .*' " (*Signal Oil & Gas Co. v. Ashland Oil & Refining Co.* (1958) 49 Cal.2d 764, 776, fn. 6.)

Larkins thus may not obtain reversal of the terminating sanction entered against her for violating the injunction merely by demonstrating that the injunction was erroneously issued. Even if the trial court erred in entering the injunction,[13] Larkins was

_____

13    We emphasize that we are in no way suggesting that the trial court erred in issuing the April 6, 2009 injunction.

14

required to comply with the injunction since the trial court acted within its jurisdiction in issuing the injunction.  Accordingly, we need not consider Larkins's arguments that the trial court erred in issuing the injunction, "because demonstrating that the trial court *erred* in issuing the injunction would not be sufficient to demonstrate that the court acted in 'excess of its jurisdiction' in doing so."  (*Wanke, supra*, 209 Cal.App.4th at p. 1178.)

4.  *The trial court did not err in striking Larkins's answer and permitting a default to be entered against her as a terminating sanction*

Larkins claims that the trial court erred in striking her answer and permitting a default to be entered against her as a terminating sanction.  "Sanction orders are 'subject to reversal only for arbitrary, capricious or whimsical action.' "  (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102 [reviewing order striking answer and cross-complaint entered as terminating sanction].)

a.  *Governing law*

In *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799 (*Del Junco*), the court rejected a party's argument that the trial court "exceeded its powers in striking the answer and entering default," as a "terminating sanction."  The *Del Junco* court reasoned in part, "A number of statutes provide authority for the trial court to terminate a case. . . . Additionally . . . courts have the inherent authority to dismiss an action."  (*Ibid*.)  The *Del Junco* court further stated:

> "Trial courts should only exercise this authority in extreme situations, such as when the conduct was clear and deliberate, where no lesser alternatives would remedy the situation [citation], the fault lies with the client and not the attorney [citation], and when the court issues a directive that the party fails to obey."  (*Id*. at p. 799.)

15

b.      *Application*

As detailed in part II., *ante*, the trial court found that Larkins repeatedly violated

the stipulated injunction, notwithstanding numerous direct orders from the court

demanding compliance.  It is also clear from the evidence contained in the record that the

trial court had ample basis for making these findings.  For example, the Stutz Firm

presented evidence that as late as January 2012, Larkins's Web site stated the following:

> "Shinoff [a lawyer at the Stutz Firm] has destroyed the lives of many
> individuals and families; only God knows what his body count
> is. . . .  After an encounter with Shinoff most people are left horrified
> and perplexed and shocked suc[h] evil exist[s] among us."

> "Your law firm [the Stutz Firm] has pressured teachers to commit
> perjury in order to deprive me of my rights."

> "Dan Shinoff makes agreements with the Office of Civil Rights, then
> gets paid to fight the agreements on behalf of school districts.  He
> uses the taxpayers' deep pockets to buy personal loyalty (and commit
> tortious interference) when he gives work to other attorneys."

> "School attorney Daniel Shinoff seems to take pleasure in the
> humiliation of both parents and school employees.  Shinoff has
> frequently used (and abused) the criminal justice system as a means
> of discouraging parents from complaining about schools."

> "The record shows that Daniel Shinoff . . . slanders parents and
> teachers with abandon—and tries to get them arrested."

The trial court could reasonably find that these statements were in clear violation

of Larkins's agreement to refrain from publishing "statements with regard to [the Stutz

16

Firm] and its lawyers accusing illegal conduct or violations of law, unethical conduct, lack of professional competence or intimidation."[14]

Further, the Stutz Firm presented evidence that even *after* the May 30, 2012 order in which the court ruled that Larkins remained in violation of the stipulated injunction, Larkins continued to publish the same or similar statements. Thus, the trial court could have reasonably found that Larkins remained in violation of the April 6, 2009 injunction as late as July 2012.

Accordingly, more than three years after Larkins agreed to a stipulated injunction to attempt to resolve an action brought against her, she continued to violate the terms of that injunction. In addition, the trial court reasonably found that Larkins's conduct was "willful and deliberate." Further, the record is clear that the trial court attempted numerous lesser alternatives to remedy the situation and that prior to imposing sanctions, the court had issued several directives that Larkins failed to obey. (See *Del Junco*, *supra*, 150 Cal.App.4th at p. 799.)

Larkins argues that the trial court's interpretation of the injunction is too broad and that she repeatedly requested clarification of the scope of the injunction from the court. We reject this contention. The statements quoted above are within any reasonable

---

14    At oral argument, Larkins contended that she had not personally made at least one of the statements quoted above. Even assuming that that is the case, the stipulated injunction prohibited the "publication" of statements that violated the subject matter of the injunction. The trial court could reasonably interpret the injunction as prohibiting Larkins from publishing the statements of third parties whose subject matter violated the injunction.

17

interpretation of the injunction. Further, the trial court was not required to clarify the injunction, particularly since Larkins, herself, had agreed to its terms.

Larkins's procedural arguments are similarly unpersuasive. Larkins contends that the trial court could not enter a default judgment against her because she was "promised" a jury trial at the April 6, 2009 hearing at which the parties agreed to the stipulated injunction. The record of the April 6 hearing is clear. Larkins agreed to the entry of a stipulated permanent injunction in order to avoid a jury trial that day on the issue of damages for her defamatory speech. The parties agreed to stay the action for a period of three months in order to permit Larkins to show her compliance with the stipulated injunction.[15] However, the Stutz Firm retained the right to seek damages after the 90-day period based on Larkins's prior defamatory speech.[16] Larkins thereafter failed to comply with the injunction and the court struck her answer as a terminating sanction. By failing to abide by the stipulated injunction and the court's orders seeking enforcement of that injunction, Larkins subjected herself to a terminating sanction and thereby forfeited her right to a jury trial on the issue of damages.

---

[15] In opposing the Stutz Firm's October 2011 motion, Larkins acknowledged the tentative nature of the April 6, 2009 settlement. Quoting the trial court's statements at the April 6, 2009 hearing, Larkins stated:
> "We agreed on a stipulated injunction, with the understanding that if it didn't work out, 'Either side could come in and reactivate, and the case will be tried within a reasonable period of time, 30 days or so.' "

[16] In other words, Larkins was not entitled to a dismissal of the action even if she had complied with the injunction. Thus, there is nothing inconsistent about the trial court awarding Stutz both a default judgment *and* keeping the stipulated permanent injunction in place.

18

Larkins also claims that it was improper for the trial court to allow a default to be taken against her because the court had already entered a summary adjudication against her. Specifically, Larkins argues, "Summary adjudication and striking answer/default are absolutely incompatible with each other." The trial court struck Larkins's answer pursuant to its inherent authority as a terminating sanction. We are aware of no authority, and Larkins has cited none, that prohibits the trial court's use of its inherent authority under the procedural posture of this case.

Accordingly, we conclude that the trial court did not err in striking Larkins's answer and permitting a default to be entered against her as a terminating sanction.

5. *Larkins forfeited her contention that the trial court's award of compensatory damages is excessive*

Larkins contends that the trial court's award of $30,000 in compensatory damages is excessive in light of the evidence presented at the default prove up hearing.

It is well established that "[f]ailure to move for a new trial on the ground of excessive or inadequate damages precludes a challenge on appeal to the amount of damages if the challenge turns on the credibility of witnesses, conflicting evidence, or other factual questions." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1121.) "[A] trial court has authority to grant a new trial after a default judgment on the ground that damages are excessive . . . ." (*Don v. Cruz* (1982) 131 Cal.App.3d 695, 706; see also *id*. at p. 705, fn. 3 [" 'When defendants first challenge the damage award on appeal, without a motion for a new trial, they unnecessarily burden the appellate courts with issues which can and should be resolved at the trial level' "].)

19

Larkins did not move for a new trial in the trial court on the ground that the compensatory damages are excessive. Her failure to do so precludes her challenge on appeal.

6.    *The judgment must be modified to strike the punitive damage award, given the absence of evidence pertaining to Larkins's financial condition*

Larkins contends that the trial court erred in awarding the Stutz Firm $10,000 in punitive damages because the record contains no evidence of her financial condition.[17]

Absent exceptions not applicable in this case, an award of punitive damages cannot be sustained on appeal unless the record contains meaningful evidence of the defendant's financial condition. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 112, 114-115; see also *id*. at p. 119 ["evidence of the defendant's financial condition is a prerequisite to a punitive damages award"].) The plaintiff bears the burden of producing such evidence. (*Id.* at p. 119.) The Stutz Firm failed to present any evidence of Larkins's financial condition in the default prove up proceeding.

Accordingly, the default judgment must be modified to strike the punitive damage award.

---

17    Larkins was not required to raise this contention in a motion for new trial because its resolution does not turn on a question of fact. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 759 [permitting challenge to sufficiency of the evidence of lost profits to support damage award notwithstanding party's failure for new trial on the ground that damage were excessive because "the issue here is not a question of *excessive* damages, but whether the evidence was sufficient to support the award of lost profits in *any* amount"].)

20

B.      *The trial court did not abuse its discretion in denying Larkins's motion to set aside the judgment*

Larkins claims that the trial court abused its discretion in denying her motion to set aside the default judgment.

1.      *Governing law and standard of review*

Code of Civil Procedure section 473, subdivision (b) provides in relevant part:

>      "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

In *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118 (*King*), the court defined the standard of review that an appellate court is to apply in reviewing an order denying a motion to set aside under Code of Civil Procedure section 473:

>      "The standard for appellate review of an order denying a motion to set aside under section [Code of Civil Procedure] section 473 is quite limited.  A ruling on such a motion rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice."

2.      *Application*

In its order denying Larkins's motion to set aside the default judgment, the trial court restated the lengthy history of Larkins's noncompliance with the April 6, 2009 stipulated injunction and with the court's orders seeking enforcement of that order.  The court ruled that the default did not arise from Larkins's "mistake, inadvertence, surprise, or excusable neglect" (Code of Civ. Proc., § 473), but rather, "was the result of

21

[Larkins's] willful and deliberate acts, which resulted in the Court striking [Larkins's] answer as a sanction."

On appeal, Larkins fails to present any argument demonstrating that the trial court abused its discretion in finding that the default resulted from her willful noncompliance with the court's orders rather than from some mistake or excusable neglect. Accordingly, we conclude that the trial court did not err in refusing to set aside the default judgment.

C.    *The trial court did not abuse its discretion in denying Larkins's motion to dissolve the injunction*

Larkins claims that the trial court abused its discretion in denying her February 2013 motion to dissolve the stipulated injunction.

1.    *Governing law and standard of review*

In *Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 562, the Supreme Court outlined the law governing a motion to dissolve an injunction and appellate review of an order on such motion:

> "[The] . . . dissolving, or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case, and the trial court's judgment will not be modified or dissolved on appeal except for an abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 850, (*Salazar*) [A] court [may] modify or dissolve an injunction or temporary restraining order 'upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order.' (Code Civ. Proc., § 533; accord, Civ. Code, § 3424, subd. (a) [grounds for modifying or dissolving 'final injunction']; see also *Salazar, supra,* 9 Cal.4th at p. 850 [court has

inherent power to vacate an injunction upon a showing of a change in controlling law].)"

These principles apply "even though the judgment providing the injunctive relief is predicated upon stipulation of the parties." (*Welsch v. Goswick* (1982) 130 Cal.App.3d 398, 404-405.)

Although a party may appeal an order denying a motion to dissolve an injunction (Code Civ. Proc., § 904.1, subd. (a)(6)), "to the extent . . . [an] appeal from an order . . . refusing to dissolve a restraining order presents issues that could have been raised in an appeal from the original restraining order, those issues are not reviewable . . . ." (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1084.)

2. *Application*

The bulk of Larkins's arguments in her combined motion to set aside the default and dissolve the injunction pertained to purported errors related to the granting of the original April 6, 2009 injunction. For example, Larkins argued, "The April 6, 2009 permanent injunction as written is unconstitutional on its face." On appeal, she repeats many of these arguments.[18] To the extent that Larkins contends that the trial court erred in refusing to dissolve the injunction on grounds that she could have raised in the appeal

---

[18] Larkins's pleadings in the trial court and her brief on appeal are extremely unclear with respect to which arguments she intends to apply to which claims. For example, it is difficult to ascertain from Larkins's combined motion to set aside the default and dissolve the injunction which of her arguments pertained to the default and which pertained to the injunction. Similarly, her appellate brief does not make clear which arguments pertain to her claim that the court erred in refusing to set aside the default judgment and which arguments pertain to her claim that the trial court erred in denying her motion to dissolve the injunction.

from the original injunction, such contentions are not reviewable in this appeal from the order denying Larkins's motion to dissolve the injunction.[19]  (*Malatka v. Helm*, *supra*, 188 Cal.App.4th at p. 1084.)

Larkins also appears to contend that the trial court's overly broad interpretation of the injunction constitutes a changed circumstance that warrants dissolving of the injunction.  The trial court did not modify the injunction or issue an order interpreting the terms of the injunction.  Even assuming that the trial court's orders *enforcing* the terms of the injunction could theoretically constitute a changed circumstance warranting *dissolving* the injunction, it is clear that the trial court did not abuse its discretion on this ground.  As discussed above (see pt. III.A.4., *ante*), the trial court reasonably found that Larkins repeatedly violated the April 6, 2009 injunction.  Accordingly, the trial court did not abuse its discretion in declining to dissolve the injunction on the ground that its overly broad interpretation of the injunction constituted a changed circumstance warranting dissolution of the injunction.

Larkins also contends in her brief on appeal that the "injunction as envisioned by [the Stutz Firm] and the trial court is impossible to enforce because it would take endless

---

19     We considered Larkins's claims that the stipulated injunction is unconstitutional on its face and the product of extrinsic fraud in connection with Larkins's appeal from the default judgment, under the theory that Larkins may contend that the original injunction was issued in excess of the trial court's jurisdiction, in an appeal from a judgment stemming from a terminating sanction issued based on Larkins's failure to comply with the original injunction.  (See pt. III.A.2. & pt. III.A.3., *ante*.)  In addition, to the extent Larkins's extrinsic fraud claim could be said to raise a contention that could not have been raised in an appeal from the original injunction, we conclude that the trial court did not abuse its discretion in denying her motion to dissolve the injunction on the ground that it was obtained by extrinsic fraud, for the reasons stated in part III.A.3.,*ante*.

24

litigation to have a judge rule on every statement [the Stutz Firm] doesn't like."[20]  To the extent the difficulty of enforcing the injunction constitutes a new circumstance, the trial court could have reasonably determined that such difficulty was entirely due to Larkins's refusal to comply with the injunction and thus did not constitute a basis for dissolving the injunction.

Larkins also contends that the fact that her "answer has been stricken and a default judgment has been entered" is a new circumstance that justifies dissolving the injunction. While we agree that the fact that the trial court has entered a terminating sanction against Larkins for her contemptuous behavior is a new circumstance, it is not one that would justify dissolving the injunction.  (See *Del Junco, supra,* 150 Cal.App.4th at p. 801 [affirming trial court's striking of defendant's answer and entering default as terminating sanction and judgment containing permanent injunction against defendant].)

Finally, to the extent that Larkins's brief may be read as arguing that the trial court abused its discretion in declining to find that the "ends of justice would be served by the . . . dissolution of the injunction," we reject this claim.  (Code Civ. Proc., § 533.)  In light of the trial court's repeated findings that Larkins failed to comply with the April 6, 2009 stipulated injunction and with the trial court's orders enforcing that injunction, the trial court had ample basis for determining that ends of justice would not be served by dissolving the injunction.

---

[20]    We assume for purposes of this decision that Larkins adequately raised this contention in her motion to dissolve the injunction in the trial court.

IV.

DISPOSITION

The order denying the motion to set aside the default judgment and dissolve the injunction is affirmed.  The judgment is modified by striking the punitive damages award.  As modified, the judgment is affirmed.  In the interests of justice, Larkins shall bear costs on appeal.

_____

AARON, J.

WE CONCUR:


_____

HALLER, Acting P. J.


_____

McDONALD, J.