Filed 12/1/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PEIMAN SHAYAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EBBY SHAKIB,<br><br>    Defendant and Respondent. | B337559, B339376<br>(Los Angeles County<br>Super. Ct. No. 23STCV03714)<br><br>(William F. Fahey, Judge)<br><br>O R D E R |

Farivar Law Firm and Fahim Farivar for Plaintiff and
Appellant.

Murphy Rosen, David Rosen; Novian & Novian, Farid
Novian and Sean Raymond Bozarth for Defendant and
Respondent.

————————————

THE COURT:

It is undisputed that appellant's attorney, Fahim Farivar,
filed a brief containing numerous fabricated quotations—that is,
language falsely attributed to published decisions. By filing a
brief that misrepresents legal authority, Farivar unreasonably
violated longstanding rules of this court. Regardless of

whether inaccuracies in a brief are the result of using artificial intelligence (AI) tools or some other drafting process, as Farivar and appellant argue occurred here, the signatory attorney is responsible for the content of the brief and subject to sanctions for inaccuracies it contains.

Accordingly, we grant respondent's motion to strike appellant Peiman Shayan's opening brief.  In addition, on the court's own motion, we award monetary sanctions, payable to the court, against Farivar, and allow appellant to file a new brief.

### A.    *The Parties' Arguments and Submissions*

Respondent Ebby Shakib contends that attorney Farivar used AI in drafting appellant's opening brief, resulting in the brief "containing what are commonly referred to as [AI] 'hallucinations' "—here, "made[-]up quotes from reported decisions."  Further, as respondent notes, appellant's opening brief quotes from "a transcript of a hearing in a different matter altogether" (italics omitted), strategically replacing with ellipses the portions of the quotation that would betray it is from a hearing in another case.[1]  On these bases, respondent moved this

---

[1] Specifically, in arguing the lower court was reluctant to grant appellant leave to amend his complaint, the opening brief purports to quote the court as saying the following:  " 'Well, at best that would cure that one issue.  But as I said at the outset, there are a number of other problems with your . . . I'm not sure I would give you full leave to amend; but I'm going to take it under submission.' (RT, 11/09/23, pp. 17:17–24.)"  This quote, however, is from the transcript of a November 9, 2023 hearing in *DZCollections v. Abadi*, not this case.  The complete quote reads as follows (the portions omitted in the appellant's opening brief are bolded):  "The Court:  Well, at best that would cure that one

2

court to strike the brief and dismiss the consolidated appeal as a sanction.

In opposing the motion, appellant does not dispute that these fabricated quotes appear in his opening brief. Instead, he refers to them as "clerical citation errors" and denies that they are the result of attorney Farivar using AI tools. Appellant contends that Farivar "personally retrieved and reviewed each authority [cited in the brief] in Westlaw, read the opinions in full, and confirmed their applicability to the propositions advanced." According to appellant, the inaccuracies are the result, not of AI, but of Farivar's drafting process. Specifically, Farivar provided his "staff" with a draft brief containing "placeholders" of legal and record citations and "repeatedly instructed staff to . . . either replace draft placeholders with verbatim transcript passages or published case language from Westlaw, supported by precise citations, or delete the line entirely if it could not be verified." As a result, "a small number of paraphrase placeholders inadvertently remained in the final brief."

---

issue. But as I said at the outset, there are a number of other problems with your **cross-complaint, including lack of specificity on fraud. Negligent misrepresentation requires a particular duty. I'm not sure—well, conspiracy and an unjust enrichment are remedies,** so I'm not sure I would give you full leave to amend; but I'm going to take it under submission." The instant matter involves neither a cross-complaint, nor fraud, nor conspiracy.

3

As to the citation to a transcript from another matter, appellant explains that this, too, was an innocent mistake resulting from "portions of the transcript[ ] [in the other matter being] inadvertently included in the certified reporter's transcript provided to this court."  (Capitalization omitted.)

To support his characterization of the fabricated quotes, appellant offers the declaration of attorney Farivar, excerpts from Farivar's Westlaw history referencing the cases cited, and chat logs of communications between Farivar and his staff. He also offers a "quotation clarification and verification table" (capitalization omitted) providing, for "almost all of the" citations respondent describes as AI-hallucinations, the actual language contained in the authority cited.  Appellant asks that, "[t]o the extent the court deems corrective measures appropriate" (capitalization omitted), we grant him "leave to file a corrected [opening brief] and/or to conform the brief exactly to the clarifications in" the table.

According to appellant, this table establishes that the 10 fabricated citations it identifies reflect only "minor difference(s) in wording, not substance [compared to the actual language in the authority cited], and the underlying authorities fully support the propositions advanced."  The table includes three distinct types of fabrications, and we disagree that appellant's characterization applies to any of them.

One type of fabricated citation uses words that appear in the decision from which the brief purports to quote, but put together in a way that does not appear in the decision. Another type uses language merely paraphrasing the decisions purportedly quoted.  For example, the opening brief attributes the following quotation to *Berman v. Bromberg* (1997) 56

4

Cal.App.4th 936, 947: " 'The sham pleading doctrine is not intended to prevent honest clarifications or refinements based on subsequent discovery or reflection.' " The language that actually appears in the case is: "The foregoing rule 'is intended to prevent sham pleadings omitting an incurable defect in the case. However, "[r]ules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of the privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent the correction of ambiguous statements of fact." ' [Citation]." (*Berman, supra,* 56 Cal.App.4th at p. 946.)

Yet another type of fabrication in the opening brief goes beyond the language that actually appears in the decision or any paraphrase thereof. For example, the opening brief attributes the following language to *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 269-270: " 'A partial disposition does not entitle the defendant to fees if the plaintiff subsequently dismisses the case. The dismissal eliminates the basis for prevailing party status.' " This *Gogri* decision—both generally and in the specific language from it that the "citation clarification and verification table" identifies as the basis for the fabricated quote—does not discuss or even mention fees or prevailing party status. (*Gogri, supra,* 166 Cal.App.4th at pp. 269–270.) By any measure, all

5

three types of fabricated quotations are more than mere "clerical citation errors."

Respondent filed a reply in response to appellant's opposition to the sanctions motion. The reply notes that appellant's opposition itself contains inaccurate representations of case holdings, something this court has confirmed. We permitted appellant to file supplemental materials—primarily additional records of Farivar's Westlaw research—as well as an additional opposition brief.

### B. *Farivar Has Committed Sanctionable Conduct*

As interpreted recently in *People v. Alvarez* (2025) 114 Cal.App.5th 1115 (*Alvarez*), the rules of this court impose on attorneys the obligation to assure that filings they sign do not falsely represent the holdings of cases. (See *Alvarez, supra*, at pp. 1119-1120 [holding it is an "unreasonable violation of the Rules of Court" to "misrepresent[ ] the substance of cases in filings before this court"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [requiring all assertions of law in brief be supported by citation to legal authority]; see also Code Civ. Proc., § 128.7, subd. (b)(2) [requiring "legal contentions" in a brief to be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"]; *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 445 (*Noland*) [concluding that "relying on fabricated legal authority is sanctionable" and rendered appeal frivolous].) The Rules of Professional Conduct impose a similar responsibility. (See Rules Prof. Conduct, rule 3.3(a)(2) [duty to not "knowingly misquote to a tribunal the language of a book, statute, decision or other authority"]; see also Bus. & Prof. Code,

§ 6068, subd. (d) [duty "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law"].)

The Fourth District in *Alvarez* and Division Three of this court in *Noland* each concluded that an attorney had unreasonably failed to comply with this obligation by filing briefs containing fabricated quotations (and in some instances, fabricated cases) that the attorneys admitted were AI-generated. (See *Alvarez, supra*, 114 Cal.App.5th 1115; *Noland, supra*, 114 Cal.App.5th 426.) We conclude Farivar has similarly failed to comply with this obligation, whether the fabricated citations in appellant's brief derive from Farivar's use of AI or from the editing process appellant and Farivar describe. We disagree with Farivar that we must reach a different conclusion because he declares he reviewed the cases cited. Regardless of whether Farivar read the cases cited and/or personally checked the accuracy of all citations in the brief, the rules of this court require him to present accurate, truthful representations of the facts and law to this court. This he did not do.

We further conclude that Farivar's conduct reflects an "unreasonable" violation of the rules of this court (Cal. Rules of Court, rule 8.276(a)(4)), and thus a basis on which we may impose sanctions. (Cal. Rules of Court, rule 8.276(a).) In *Alvarez*, the court concluded the attorney's violation of the rules was unreasonable in part because he had knowingly provided the false statements of law at issue. (*Alvarez, supra*, 114 Cal.App.5th at pp. 1119-1120.) The court inferred this state of mind from the attorney's admission that he relied solely on AI-tools to generate citations, because this involves an inherent risk that the tools will generate inaccurate statements of law. (See *ibid*.) Here, Farivar admits he relied solely on nonattorney staff, not to

7

confirm the accuracy of citations and quotes, but to find case language and pin citations based on general "placeholder" paraphrases Farivar provided. This process involves an inherent risk that the staff will provide inaccurate language and, like the reliance on AI in *Alvarez*, supports an inference that he knowingly and unreasonably violated the rules. Farivar's additional mischaracterization of legal authority when responding to opposing counsel pointing out Farivar's misrepresentations in the opening brief further confirms this inference. Sanctions are, therefore, appropriate.

### C.   *The Appropriate Sanction*

We disagree with respondent, however, that dismissing the appeal is an appropriate sanction for Farivar's conduct.[2] Our inherent authority to impose this sanction "should be exercised only in extreme situations, such as where the conduct was clear and deliberate and no lesser sanction would remedy the situation." (*Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1271.) We conclude that we can sufficiently address the prejudice to the parties and the court from Farivar's sanctionable conduct and sufficiently achieve the deterrent purpose of sanctions (see, e.g., Code Civ. Proc., § 128.7, subds. (b)(2), (c) & (h)) by doing the following:

First, Farivar shall pay sanctions in the amount of $7,500 to the clerk of this court within 30 days after the remittitur is filed. We calculate this amount based on, inter alia: (1) the significant amount of time this court spent verifying the

---

[2] In an October 7, 2025 order, we denied respondent's motion to dismiss the consolidated appeal as a sanction. We explain that decision here.

fabricated citations in the opening brief, and (2) that Farivar refused to accept responsibility for his conduct, instead characterizing the fabricated quotations and citations as mere "clerical citation errors" and continuing to misrepresent legal authority in his opposition to the sanctions motion.

Second, we strike appellant's opening brief and require appellant to file, within 10 days of the issuance of this order, a corrected opening brief. Appellant's corrected brief may differ from the version originally filed only to the extent it corrects or omits the fabricated citations and quotations in the original version. Appellant shall file and serve both a final version of the new brief as well as a redline version.

Finally, because we conclude attorney Farivar has violated a Rule of Professional Conduct, we are required to "take appropriate corrective action." (Cal. Code Jud. Ethics, canon 3D(2).) In line with this obligation, we direct the clerk of the court to serve a copy of this order on the State Bar.

We acknowledge and have considered that, as appellant argues, the majority of the fabricated quotes in the opening brief do not appear to be misrepresentations that work to appellant's advantage; that is, the brief does not represent the law to be more favorable to appellant's arguments than it actually is. Nonetheless, we must consider broader concerns about the integrity of the courts and the legal profession. Inaccurate citations in briefing—whether the result of technological hallucinations or human failure to verify—may be relied on in court decisions, "circulated, believed, and become 'fact' and 'law' in some minds. We all must guard against those instances. . . . 'There is no room in our court system for the submission of fake,

9

hallucinated case citations, facts, or law. . . . ' [Citation.]"
(*Noland, supra*, 114 Cal.App.5th at pp. 448-449.)

IT IS SO ORDERED.


_____

ROTHSCHILD, P. J.       BENDIX, J.     WEINGART, J.